PARISH v. JUCKETT.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

PLEADINGS (§ 364*)—IRRELEVANCY AND REDUNDANCY—STRIKING OUT.

Striking out, as irrelevant and redundant, from a complaint to recover money obtained by defendant from deceased, allegations showing the fraudulent obtaining of the money by defendant from deceased while in a mentally enfeebled condition, and while defendant was acting in a fiduciary relation, leaving the complaint one merely for conversion, is error.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1156–1162; Dec. Dig. § 364.*]

Houghton, J., dissenting.

Appeal from Special Term.

Action by William H. Parish, administrator of Earl Parish, deceased, against Byron D. Juckett. From an order striking out as irrelevant and redundant various portions of the complaint, plaintiff appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, BETTS, and HOUGHTON, JJ.

Rogers & Sawyer, for appellant.
J. Sanford Potter, for respondent.

BETTS, J. The complaint recites in substance that Earl Parish (who died in January, 1910) in 1907 was the owner of a parcel of land; "that at said time said Earl Parish was an old man, about the age of 80 years, in feeble health, and physically and mentally infirm; that the defendant, an acquaintance, but not a relative, of intestate, well knowing him to be in such condition, and knowing that he was susceptible and liable to be easily influenced and deceived, and contriving and intending to take advantage of his weakness, infirmities, and credulity to get possession of his property, induced and procured said Earl Parish to sell his home in the town of Dresden aforesaid, and leave the same, and come to the town of Whitehall, N. Y., to live with the defendant"; and that thereafter, and while said Earl Parish was living with the defendant at his home, and under defendant's exclusive control, the defendant, while acting in a fiduciary capacity, by fraud and undue influence, induced and persuaded said Earl Parish to place in defendant's hands the said $150, and that thereafter he converted the same to his own use. As a second cause of action, the complaint alleges:

"Upon information and belief, that after said Earl Parish had lived with the defendant for a time, and after defendant had obtained possession of the proceeds from the sale of his house and lot, the defendant refused to allow said Earl Parish to longer remain with him, and procured said Earl Parish to be committed to the county almshouse of Washington county, at Argyle, New York"

—and then continues in substance that afterwards one George H. Breese died intestate, leaving an estate of about $5,000; that said Earl Parish was an heir at law of said George H. Breese, and as such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

entitled to one-half of his estate; that the defendant was informed of this fact, and in order to obtain from him this property procured the release of said Earl Parish from the Washington county almshouse and brought him to Whitehall, N. Y., to live with him. Then the complaint continues that $3,116.70 was paid to said Earl Parish as his share of the estate of said George H. Breese, and that the defendant, while acting in such fiduciary capacity, by fraud and undue influence, induced and persuaded said Earl Parish to place said sum in his hands, and that he received and retains the same; and after this that the defendant refused to allow any of Parish's relatives to visit him, or have any communication with him, and assumed the absolute and complete control of the said Parish and his property, to the exclusion of all his relatives; and he asks a judgment for those two sums of money against the defendant.

The defendant moved at Special Term to strike out many of the allegations of the complaint, on the ground that they were irrelevant and redundant. The motion was granted, and an order to that effect entered, which also required the plaintiff to re-serve upon the defendant's attorney the said complaint, amended by the omission of the matter stricken out, and that defendant have 20 days to plead thereto. From this order an appeal is taken.

It will be seen that by this drastic order the court, instead of the plaintiff or his attorney, substantially framed the complaint. The words stricken out were important statements of fact as to the condition of Earl Parish at the time these various matters were alleged to have been done to him, and allegations that the defendant knew of his condition and of acts done by the defendant in connection therewith. The order strikes from the complaint as irrelevant and redundant the following words:

"That at said time said Earl Parish was an old man, about the age of 80 years, in feeble health, and physically and mentally infirm."

"Well knowing him to be in such condition, and knowing that he was susceptible and liable to be easily influenced and deceived, and contriving and intending to take advantage of his weakness, infirmities, and credulity to get possession of his property, induced and procured said Earl Parish to sell his home in the town of Dresden aforesaid, and leave the same, and come to the town of Whitehall, N. Y., to live with defendant."

"That after said Earl Parish had lived with the defendant for a time, and after defendant had obtained possession of the proceeds from the sale of his house and lot, the defendant refused to allow said Earl Parish to longer remain with him, and procured said Earl Parish to be committed to the county almshouse of Washington county, at Argyle, N. Y."

"And under defendant's exclusive control," and "while acting in a fiduciary capacity, by fraud and undue influence."

"That the defendant was informed of this fact, and, in order to obtain from him this property, procured the release of said Earl Parish from the Washington county almshouse, and brought him to Whitehall, N. Y., to live with him."

"While acting in such fiduciary capacity, by fraud and undue influence."

"Which he received on account of his wrongful fraudulent acts as trustee ex maleficio."

"That defendant, after obtaining from said Earl Parish the said sum of money aforesaid, refused to allow any of the relatives of the said Earl Parish to visit him, or have any communication with him; that defendant assumed the absolute and complete control of said Earl Parish and his prop-

erty, to the exclusion of all his relatives, and exercised said control until the time of said Earl Parish's death."

The order granted changes the complaint from the form in which it was originally constructed by the plaintiff's attorney to one for conversion simply, without permitting the pleader to plead the facts as to the condition of Earl Parish and as to the acts done by the defendant upon which the allegations of the complaint originally could be sustained.

I think abundant authority for the complaint as drawn is found in Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255, which proceeds somewhat along the same line, although the actions are not identical. While the fraud and deceit on the part of the defendant to Earl Parish could not be proved by a single act, it is competent for the plaintiff to place the court in possession of all the facts surrounding Earl Parish at the times, and surrounding the defendant at the times, referred to, or at about the time, or preceding the transaction, or following it, for a reasonable time, from which the plaintiff might ask the court to infer what was the character of the transaction or transactions between the parties, in order that the court may render an intelligent and just judgment thereon. The rule as stated in Cowee v. Cornell et al., 75 N. Y. 99, 31 Am. Rep. 428, is very applicable here:

"It may be stated as universally true that fraud vitiates all contracts; but as a general thing it is not presumed, but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood. This doctrine is well settled."

I think that the complaint as originally framed stated a good cause of action, and that the pleader should be permitted to establish it, if he can, upon a trial.

It follows that the order appealed from should be reversed, with $10 costs and disbursements to the plaintiff. All concur, except HOUGHTON, J., who dissents.