**WILLIAMS**

v.

**CAPITAL TRANSIT CO.**

**WILLIAMS v. DOUGLAS.**

**Nos. 11715, 11953.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 22, 1954.

Decided June 24, 1954.

Mr. Joseph J. Malloy, Washington, D. C., for appellant.

Messrs. John P. Arness and John J. Sirica, Washington, D. C., for appellee in No. 11715.

Mr. Richard W. Galiher, Washington, D. C., with whom Mr. William E. Stewart, Jr., Washington, D. C., was on the brief, for appellee in No. 11953.

Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant, Ada E. Williams, (plaintiff) was a passenger on a streetcar owned and operated by Capital Transit Company (Transit) when, on May 29, 1947, the streetcar collided with an automobile owned and operated by one Henderson B. Douglas (Douglas). Claiming to have suffered personal injuries as a result of the collision, plaintiff on December 31, 1949, filed this action against Transit and Douglas. Transit promptly filed its answer, and a month or so later, plaintiff attempted to serve process upon Douglas. Douglas failed to appear, and on June 28, 1950, a default was entered against him on plaintiff's application.

At the conclusion of the plaintiff's case in chief, Transit's motion for a directed verdict was denied. At the conclusion of the whole case Transit renewed its motion for a directed verdict which was denied. The jury reported disagreement as to the negligence of Transit and advised the court that it had not even reached for consideration the case against Douglas. The trial judge thereupon discharged the jury as to the case against Transit but returned it for consideration of the possible damages to be assessed against Douglas. A verdict was shortly returned against the defaulting Douglas.

Thereafter Transit filed its motion for judgment in accordance with its motion for a directed verdict, which was granted, and plaintiff appealed. (No. 11715). Some three months later the defendant Douglas "appearing specially" and for the first time, moved to set aside the judgment and the default against him and to quash service of process. The trial judge granted the Douglas motion, and plaintiff appealed. (No. 11953). The two appeals have been considered together. We will first take up the issue raised by plaintiff's appeal from the Douglas order.

I

The trial judge granted the motion in the case against Douglas upon affidavits and after hearing testimony and oral argument. In his supporting affidavit Douglas set forth that he resided at 311 Madison Street, N.W., Washington, on May 27, 1947, when the collision occurred, but that he separated from his wife in September 1947 and took up residence with his mother at 3601 Connecticut Avenue, and never thereafter resided at 311 Madison Street, N.W. He had not seen his wife since their separation, his work took him in 1948 to Utah, and by January 1950 he had become a permanent resident of Salt Lake City. He there obtained a divorce from his wife, Jane Douglas, and there, after a remarriage, he has made his permanent home. His affidavit further showed that he had never been served with process, never knew this action had been commenced and that he first learned on April 8, 1953 that a judgment had been rendered against him.

The deputy marshal's affidavit disclosed that he "personally served a copy of the summons and complaint on Mrs. Jane Douglas, wife of defendant Henderson B. Douglas on February 18, 1950 as directed by attorney for plaintiff under Rule 4 at premises 311 Madison Street, N.W., Washington, D. C."

Plaintiff relies upon Rule 4(d) (1), Federal Rules of Civil Procedure, 28 U.S.C.A., which authorizes service by leaving a copy of the summons and complaint at a defendant's usual place of abode with some person of suitable age and discretion residing therein. Of course, if the defendant did not in fact reside at 311 Madison Street, N.W. after September 1947, it was not his "usual place of abode" even if his wife, from whom he was separated, still resided there. The plaintiff insists that because the motion by Douglas was not filed until some three years after the purported

service, it was not "timely." But the filing of the motion here was timely.[1]

■ We approve the trial court's ruling. Civil Procedure Rule 4(d) (1) should be liberally construed, Rovinski v. Rowe, 6 Cir., 1942, 131 F.2d 687, 689. However service not completed at the defendant's usual place of abode is ineffective. First Nat. Bank & Trust Co. of Tulsa v. Ingerton, 10 Cir., 1953, 207 F.2d 793; Berryhill v. Sepp, 1909, 106 Minn. 458, 119 N.W. 404, 21 L.R.A.,N.S., 344. If in fact there were no service, the proceedings as to Douglas were void from the very outset. Earle v. McVeigh, 1875, 91 U.S. 503, 23 L.Ed. 398. No lapse of time can serve the plaintiff. The lack of jurisdiction of the court cannot be cured by the running of months or even years where the court had no jurisdiction to proceed against Douglas in the first place. Wise v. Herzog, 1940, 72 App. D.C. 335, 114 F.2d 486 and cases cited.

■ Plaintiff further here contends for the first time that she was entitled to a jury trial on the question as to Douglas' place of abode. Actually there was no issue of fact as to the place of abode at the time of purported service, February 18, 1950. The trial judge had before him several affidavits clearly establishing that Douglas had not lived with his wife since 1947. There was no proffer of proof to the contrary. The trial judge offered the plaintiff adequate opportunity to present such evidence as she might have to demonstrate that Douglas was in fact a resident at 311 Madison Street at the time of the attempted service. No such evidence was offered. Indeed, Jane Douglas from whom the defendant had been separated was present in court, and plaintiff cross-examined her as far as she chose to do so. The mother of the defendant Douglas

was in court but in response to an invitation by the trial judge, plaintiff advised that she did not desire to make her a witness. Where there was no issue of fact, there was no question for the jury. Fletcher v. Evening Star Newspaper Co., 1940, 72 App.D.C. 303, 307, 114 F.2d 582, certiorari denied, 1941, 312 U.S. 694, 61 S.Ct. 732, 85 L.Ed. 1130.[2] The trial judge concluded that service upon Jane Douglas was not service upon the defendant, because 311 Madison Street was not his place of abode when the marshal left papers with her. Thus the District Court never acquired jurisdiction over the person of Douglas.

■ Some time in the fall of 1947 and before this action was brought, the plaintiff, then without counsel, conferred with a claims adjuster in Transit's office. At that conference a representative of the insurance carrier insuring Douglas was present. While the jury was considering its verdict, representatives of the insurance carrier were present in court and discussed possible settlement with plaintiff's counsel. Plaintiff argues from these facts that Douglas must have had notice of the action. These facts indicate only that the insurance carrier representatives had notice, not that the defendant did. And even if Douglas had had notice, there had been no service of process upon him. Where the District Court failed to acquire jurisdiction over the person of Douglas, it was without power to adjudicate rights asserted against him. Restatement, Conflict of Laws § 74, comment b. The judgment as to Douglas, accordingly, was void. McDonald v. Mabee, 1917, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608.

■ However unfortunate that Douglas was not before the court, plaintiff has established no error in the District Court

1. Rule 60(b), Fed.R.Civ.P., required only that the motion be filed within a reasonable time. The trial was terminated November 19, 1952; this motion was filed May 1, 1953, three weeks after Douglas learned of the judgment against him.

2. Moreover the plaintiff made no demand for a jury trial as is required by Rule

38(b), Fed.R.Civ.P. Thus, plaintiff must be deemed to have waived a jury trial, *Idem,* Rule 38(d). By our noticing the point, we do not mean to imply that a jury trial would have been necessary even if plaintiff had proffered proof that Douglas in 1950 resided at his wife's place of abode.

which can have the effect of restoring the void judgment. There was ample basis for the finding that there had been no service on Douglas and the trial judge had no recourse but to grant the Douglas motion. On the appeal as to Douglas, then, there is no error and the order setting aside the judgment as to him will be affirmed.

## II

At the close of the plaintiff's case in chief the trial judge denied Transit's motion for directed verdict. His ruling was in accord with Capital Transit Co. v. Jackson, 1945, 80 U.S.App.D.C. 162, 164, 149 F.2d 839, 841, 161 A.L.R. 1110, certiorari denied 1945, 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 459, where we said: ". . . [I]n the District of Columbia the rule is that, *when res ipsa is applicable*, it permits an inference of negligence and thus establishes a prima facie case, or, in other words, makes a case to be decided by a jury. But it does not shift the burden of the proof. When all the evidence is in, the question for the jury still is whether the preponderance is with the plaintiff."[3] (Emphasis supplied.) Transit at the close of the whole case renewed its motion for directed verdict which was denied without prejudice.

After considering the case many hours the jury advised the trial judge that it was "deadlocked" on the issue as to the negligence of Transit, and was thereupon discharged. As permitted by Rule 50(b), Federal Rules of Civil Procedure, Transit thereafter filed a motion for judgment in accordance with its motions for directed verdict which was granted. Plaintiff insists that the facts raised a typical jury question and that instead of granting defendant's motion, the trial judge should have ordered a new trial. In considering the problem

thus raised, the evidence must be considered in the light most favorable to the plaintiff. Peigh v. Baltimore & O. R. Co., 1953, 92 U.S.App.D.C. 198, 204 F.2d 391.

Testimony disclosed that about 5:30 p. m. on May 29, 1947 a Transit streetcar, southbound, stopped at a loading platform located on the west side of Seventh Street, just north of its intersection with H Street, to discharge and receive passengers. The plaintiff boarded the streetcar, and joined others who were standing in the aisle. Just before the streetcar was set in motion, a Capital Transit bus traveling eastward on H Street, some 56 feet in width, entered the intersection and had started across Seventh Street, some 50 feet in width, just as the traffic light for Seventh Street traffic changed to "green." "He went through just as the light was changing, when I was looking out the right side. I seen this car back about 10 feet following this vehicle," (the Transit bus) as one witness put it. "This car," eastbound on H Street, was operated by the defaulting defendant Douglas, "directly" behind the bus. When the Seventh Street light changed to green, the streetcar was set in motion, reached a speed of from 5 to 10 miles per hour at the center of the intersection, some 50 feet from the loading platform, when, a "little beyond" the center of the intersection the eastbound Douglas coupe passed in front of the streetcar and was struck at a point near the driver's door. The streetcar operator saw the Transit bus cross Seventh Street and that it was being halted at a bus stop sign located on the south side of H Street and east of Seventh Street, before the collision occurred. Although the Douglas car was "just a way behind the bus," as the operator testified, there was no evidence that

---

**3.** Of course, it may sometimes happen that the plaintiff's case in chief is so weak as to show clearly that there was no negligence on the part of the defendant and no room for *res ipsa loquitur:* in that event, a directed verdict for the defendant is proper. Cf. Washington,

Marlboro & Annapolis Motor Lines v. Maske, 1951, 89 U.S.App.D.C. 36, 190 F. 2d 621, certiorari denied, 1951, 342 U.S. 834, 72 S.Ct. 56, 96 L.Ed. 631. But, as will be seen, no such situation was presented here.

the Transit operator sounded a bell or gong or gave other warning.

■ That a condition of emergency confronted the operator of the streetcar and Douglas, driver of the coupe, cannot be doubted. Were the circumstances such that by proper care and foresight, the Transit operator should have apprehended danger of a collision? Should the operator sooner have perceived the oncoming Douglas car? Did the operator keep his eye on the bus as it approached and was being stopped at the bus stop sign rather than keep an adequate lookout for other approaching traffic? Did the operator fail to sound a gong or other warning? Could he have stopped the streetcar or did he take any steps to stop the streetcar after he became aware that the Douglas car was about to pass in front of the streetcar? In the exercise of the highest degree of care which Transit owed to its passengers, did the operator do all that reasonably could have been done to avoid the impending collision? In short, while these and other questions occur to us, "The crucial question is not what the motorman did after he was faced with the emergency . . ., but how he happened to become involved in that emergency." In Cole v. Capital Transit Co., 1952, 90 U.S.App.D.C. 289, 195 F.2d 568, we outlined the rule which should govern in cases such as this. At page 290 of 90 U.S.App.D.C., at page 569 of 195 F.2d we said:

"Assuming, without deciding, that the primary cause of the accident was negligence on the part of Barnes, still that was not the controlling issue in the trial of this suit between Mrs. Cole, a passenger, and the Transit Company. Here the Company, for the safety of its passengers, is held to the highest degree of care commensurate with the particular hazards involved, which, as to this case, means all the care and caution which a motorman of reasonable skill, foresight and prudence could fairly be expected to exercise under the conditions leading up to and resulting in the collision. . . . The crucial question is *not what the motorman did after he was faced with the emergency of the Barnes car, but how he happened to become involved in that emergency.* Were the circumstances such that he by proper care and foresight should have apprehended danger of a collision? If so, regardless of the streetcar's preferred right of way, it became the motorman's duty to do all that reasonably could have been done to avoid the impending danger. . . . Hence there arose questions which fell within the province of the jury to decide."

■ Without recital by us of variations and even conflicts between the versions offered by various witnesses, without our dissection of the nuances of the claims of the parties with respect thereto, it was for the jury to determine whether the evidence preponderated in the plaintiff's favor. It well may be that upon a new trial a jury will decide that Transit's operator was free from negligence. It may find that Douglas was solely at fault. Perhaps the jury will believe there was concurrent negligence on the part of the operators of both vehicles.

Transit urges that this case is governed by Washington, Marlboro & Annapolis Motor Lines v. Maske, 1951, 89 U.S.App.D.C. 36, 190 F.2d 621, certiorari denied, 1951, 342 U.S. 834, 72 S.Ct. 56, 96 L.Ed. 631. There, however, the court concluded that the verdict lacked substantial support. The bus, to avoid collision with a taxicab stopped suddenly. The plaintiff testified she saw no reason for the bus to stop. She saw no car, she said. The court found it impossible to reconcile her testimony as that of an interested witness with evidence adduced by several disinterested witnesses. Particularly, the court pointed out, a verdict in her favor lacked substantial support "in view of her previous contradictory statement to her doctor." Despite all de-

nials by the plaintiff that she had seen a car and indeed after her insistence that none was there, this court observed "It was proved beyond reasonable doubt, although appellee denied, that she had told her doctor the 'bus and an auto almost had a collision.'" Clearly, the Maske case is in nowise to be understood as denying the rule announced in the Jackson case and applied in the Cole case.

We cannot doubt the importance of one remaining factor, both when the jury was considering the case and when the trial judge ruled on Transit's motion for judgment in accordance with its motion for a directed verdict. Douglas may not have been present at the trial but he was still very much in the case. The trial judge had charged that because of the Douglas default, his negligence must be taken to have been admitted, and thus the jury had for determination as to him, merely the question of what damages, if any, the plaintiff might be entitled to recover against him. It may well have been that the final disagreement as to Transit stemmed from insistence upon the part of some of the jurors that Douglas by conceding negligence through his default, had assumed liability for the entire occurrence. At any rate, when Transit's motion was granted after the trial, the judgment against Douglas had not yet been attacked. Because all proceedings as to him were thereafter voided, upon a new trial a charge must be given which will be adequate for the guidance of the jury with Douglas out of the case as a party defendant.

With real reluctance we have reached the conclusion that the able trial judge erred in ruling as a matter of law that the jury could not conclude that Transit was negligent and that its negligence was a proximate cause of the plaintiff's injuries. The factual issues of negligence and proximate cause were for the jury. Higashi v. Shifflett, 1952, 90 U.S.App. D.C. 302, 195 F.2d 784. Nor do we think in the light of the facts and circumstances in this case that it may properly be said that no reasonable man would hold in favor of the plaintiff. Shewmaker v. Capital Transit Co., 1944, 79 U.S.App. D.C. 102, 143 F.2d 142.

No. 11715 is reversed and remanded.

No. 11953 is affirmed.