Charles H. WINSOR, individually and as Administrator of the Estate of Alma L. Winsor, Deceased, Plaintiff,

v.

UNITED AIR LINES, Inc., Defendant.

Civ. A. No. 1926.

United States District Court
D. Delaware.

Jan. 30, 1958.

Motion to remand to State Court. Granted.

This action arises out of the tragic airline crash in Colorado on November 1, 1955, in which all lives were lost as the result of an explosion of a bomb placed in the luggage of one of the passengers.

Plaintiff, Winsor, husband and administrator of his deceased wife's estate, is a resident of Newfoundland. Defendant, United Air Lines, Inc., is incorporated in Delaware. Mrs. Winsor, the deceased, boarded defendant's plane in New York. It was en route from Gander to Seattle, Washington. Shortly after leaving Denver, the plane exploded and crashed. It is a matter of public record that John Gilbert Graham was convicted of murder and executed as a result of proof that he had secreted a home-made bomb in the baggage of his mother, a passenger on the plane.

The case was originally filed in the Superior Court of the State of Delaware and removed to this Court upon a petition alleging that the cause of action was founded upon a claim or right arising under the Constitution, treaties or laws of the United States. 28 U.S.C. § 1441 (b). This contention is opposed by plaintiff in its motion for remand.

The first cause of action [1] contains two counts. Count one, after identifying the parties and happenings leading up to and including the crash, setting out the Colorado Death Act (3 Colo.Rev.Stats.Anno. [1953] § 41–1–1 and alleging that Mrs. Winsor's death resulted from defendant's negligence, goes on to state:

"That at the time decedent suffered her injuries and death as aforesaid, the transportation of the decedent was international transportation within the terms of, and subject to the Convention for the Unification of Certain Rules relating to International Transportation by Air, and additional Protocol, signed at Warsaw October 12, 1929, and said Convention has been duly adhered to by the United States.

"That Article 17 of the Warsaw Convention provides as follows:

" 'The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.'

"That Article 20(1) of the Warsaw Convention provides as follows:

" 'The carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.' "

Damages are claimed in the maximum amount allowed by the Treaty. The second count, after reciting the first twelve paragraphs of the first count, avers that defendant is liable under the Colorado Death Act (3 Colo.Rev.Stats.Anno. [1953] § 41–1–1) upon the principle of res ipsa loquitur and claims damages for $10,000 for Mrs. Winsor's death and $2,000 for loss of property, being the maximum amount of recovery permitted by the Colorado Death Act.

The sole question for decision is whether this case presents a claim or right arising under a treaty of the United States.

Stewart Lynch (of Hastings, Lynch & Taylor), Wilmington, Del., for plaintiff. Theodore E. Wolcott, New York City, of counsel.

Edwin D. Steel, Jr., and Harvey S. Kronfeld (of Morris, Steel, Nichols & Arsht), Wilmington, Del., for defendant. Haight, Gardner, Poor & Havens, New York City, of counsel.

LAYTON, District Judge.

In recognition of what appear to be the better-reasoned authorities, defend-

---

1. The second cause of action claims damages for the manner in which deceased's body was shipped to her home in Newfoundland.

858

ant concedes for the purposes of this suit that the Warsaw Convention, 49 Stat. 3000, of itself does not create a cause of action.[2] Noel v. Linea Aeropostal Venezolana, 2 Cir., 247 F.2d 677.

However, defendant contends that it is not essential for the purposes of invoking § 1441(b) that the Treaty created the cause of action providing a construction of the Treaty is necessary. I am inclined to agree with defendant that it will be necessary during the course of the trial to construe the Treaty but differ with its argument that the necessity for construction brings this matter within the purview of § 1441(b).

Because of defendant's concession, we assume for the purposes of this suit that both counts are based upon the Colorado Death Act. In fact, both counts plead the Act[3] and while the first count recites paragraphs 17 and 20 of the Warsaw Convention and seeks recovery in the maximum amount specified by that Treaty, nevertheless, it is apparent not only from the Complaint but from plaintiff's brief that he looks to the State Act, not the Treaty, as the source of the right to sue.[4]

Preliminarily, it might be argued with some persuasiveness that the combination of defendant's concession, the deliberate pleading of the Colorado Death Act in both counts of the Complaint and plaintiff's disclaimer of any intention to rely on the Treaty as the basis for his claim are, in themselves, sufficient to deny jurisdiction. Clearly, plaintiff did not have to plead paragraphs 17 and 20 of the Treaty in order to state a good cause of action and, particularly, paragraph 20

would seem to represent a matter of defense only. Under the circumstances, the following quotation from Gully v. First Nat. Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70, is in point:

"Indeed, the compaint itself will not avail as a basis of jurisdiction insofar as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense."

But other, and more substantial reasons support the motion to remand. The leading case on the question of the right of removal under § 1441(b) is Gully v. First Nat. Bank, above cited. There, Justice Cardozo said in part:

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * * A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * *, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. * * * Indeed, the complaint itself will not avail as a basis

---

2. The question is still an open one in most of the Circuits, including the Third Circuit. If the Convention did, in fact, create a cause of action, then the case would present a federal question and the motion for remand would be denied.

3. "(8) Upon information and belief that at all times herein mentioned, it was and continues to be the law of the State of Colorado that where negligence, carelessness or omission of duty causes the death of another, the surviving husband

* * * may recover damages for such death."

4. "The accident having taken place in Colorado, the right to damages for wrongful death arises under the Colorado statutes and not under a treaty of the United States (the Warsaw Convention)."
* * * * * *
"On the other hand the Warsaw Convention which merely sets out certain procedural rules has been repeatedly held not to create a cause of action." (Plaintiff's brief, pages 4 and 6).

of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense."

And Judge Goodrich used this pertinent language in Downing v. Howard, 3 Cir., 162 F.2d 654, 655:

"It is apparent that the question which we have to settle is whether the plaintiff has stated a basis for recovery under the federal statute just mentioned. If he has, the fact that he also asserts a non-federal ground does not lose him his privilege of suing in the federal court. On the other hand, if the substance of his claim is one based on state law, the reference to the federal statute is not enough to bring him into federal court, unless he has independent grounds for coming there.
\* \* \* "

Certainly, in this case the "\* \* \* substance of his claim is one based on state law."

■ Nor, despite some statements to the contrary, is the fact that a federal law may or will be drawn into construction during the course of the litigation sufficient to support jurisdiction in a federal court. Illustrative of this proposition is Andersen v. Bingham & G. Ry. Co., 10 Cir., 169 F.2d 328, 329, 14 A.L.R.2d 987, [5] where it was said:

"Section 28 of the Judicial Code, 28 U.S.C.A. § 71, authorizes the removal to the United States Court for the proper district any suit of a civil nature at law or in equity arising under the Constitution or laws of the United States and having in controversy more than three thousand dollars, exclusive of interest and costs. But not every question of federal law lurking in the background or emerging necessarily places the suit in the class of one arising under the laws of the United States, within the meaning of the statute. A suit having for its purpose the enforcement of a right which finds its origin in the laws of the United States is not necessarily and for that reason alone one arising under such laws. In order for a suit to be one arising under the laws of the United States within the meaning of the removal statute, it must really and substantially involve a dispute or controversy in respect of the validity, construction, or effect of such laws, upon the determination of which the result depends. A right or immunity created by the laws of the United States must be an essential element of the plaintiff's cause of action, and the right or immunity must be such that it will be supported if one construction or effect is given to the laws of the United States and will be defeated if another construction or effect is given. And a genuine and present controversy of that kind must be disclosed upon the face of the complaint, unaided by the petition for removal or the answer. \* \* \*

"The primary Congressional purpose in the enactment of the Safety

---

5. An interesting illustration of the point under discussion may be found in comparing St. Louis, Iron Mountain & Southern Railway Co. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061, with the Andersen case. In the latter case, suit was brought in the Kansas State Court by the estate of a brakeman killed between two cars. The violation by defendant of the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., was the basis for the suit. Over plaintiff's objection, the Kansas Supreme Court affirmed an erroneous construction of the Safety Appliance Act by the lower court. On appeal, the Supreme Court of the United States reversed upon the ground that an interpretation by a State Court of a Federal Statute presented a federal question reviewable by the Supreme Court. Nevertheless, the Court clearly stated that the cause of the action arose under Kansas law. Thus here, while in my judgment the case must be remanded, yet should the Delaware State Court erroneously interpret the Warsaw Convention, its ruling would be reviewable by the United States Supreme Court.

Appliance Act was to protect employees and passengers, but the act imposes upon carriers duties with respect to brakes which are broad enough to bring within their purview protection of travelers at crossings. * * * While it prescribes absolute duties and creates correlative rights in favor of injured persons, it does not attempt to lay down rules governing actions for enforcing such rights. Instead, it leaves the nature, incidents, and regulation of the remedy to the law of the states. An action by a traveler on the highway for damages growing out of the failure of a carrier to comply with the provisions of the Act does not take its origin in the laws of the United States. An action of that kind has its genesis and regulations in the law of the state, either statutory or common law. * * *"

See also, Bullock v. United States, D.C. N.J., 72 F.Supp. 445; Jordine v. Walling, 3 Cir., 185 F.2d 662, 668, and South Carolina State Ports Authority v. Seaboard Air Line R. Co., D.C.S.C., 124 F. Supp. 533.

While not directly on point, the cited authorities by strong analogy suggest the conclusion that the source or substance of plaintiff's claim here is the Colorado Death Act and not the Warsaw Convention, and the fact that the Treaty may be drawn into construction during the course of the suit is not sufficient to sustain federal jurisdiction.

Finally, in fairness to defendant, it must be admitted that this question is not free of doubt. But the very existence of doubt, rather than helping defendant, provides additional reasons for a remand for it is settled that where the jurisdiction of a removed case is questionable, the District Court should decline jurisdiction. Louisiana State Board of Medical Examiners v. Boyd, D. C.La., 151 F.Supp. 402; Old Reading Brewery v. Lebanon Valley Brewing Co., D.C.Pa., 102 F.Supp. 434; John Han-

cock Mutual Life Ins. Co. v. United Office & Professional Workers of America, D.C.N.J., 93 F.Supp. 296.

An Order for remand will be entered.