Perry ZOUSMER, as Executor of the Estate of Jesse Zousmer, Deceased, and Perry Zousmer, as Executor of the Estate of Ruth Zousmer, also known as Ruth Taylor Zousmer, et al., Plaintiffs,

v.

CANADIAN PACIFIC AIR LINES, LIMITED, Defendant.

No. 69 Civ. 2000.

United States District Court
S. D. New York.

Dec. 19, 1969.

Kreindler & Kreindler, New York City, for plaintiffs, Gerald A. Robbie, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant, William J. Junkerman, Carroll E. Dubuc, New York City, of counsel.

## OPINION

LASKER, District Judge.

Plaintiffs move, pursuant to 28 U.S. C.A. § 1447(c), to remand this action to the New York State Supreme Court. The suit arises out of the crash of a Canadian Pacific aircraft while attempting to land at Tokyo Airport on a flight from Hong Kong on March 4, 1966. All aboard were killed, including Jesse Zousmer, Ruth Zousmer, Roland R. Giroux, Lucienne Giroux, Robert F. Hallam, and Donald Taylor, all of whom were passengers for hire aboard the airplane. The Zousmers were citizens of New York, while the other four individuals were Canadian citizens.

On March 3, 1967, an action was brought on behalf of the estates of the two Zousmers, the two Giroux, and Hallam in New York Supreme Court against three defendants: Canadian Pacific Air Lines, Limited ("CPA"), a Canadian corporation, Douglas Aircraft Co., Inc. ("Douglas"), a Delaware corporation, and Kollsman Instrument Corporation ("Kollsman"), a New York corporation. The complaint set forth wrongful death claims on behalf of the five decedents, charging each of the defendants with negligence and breach of waranty.

Defendants Douglas and Kollsman thereafter answered the complaint. Defendant CPA, however, moved on May 11, 1967 to dismiss the third, fourth and fifth causes of action (brought on behalf of the three Canadian decedents) on the ground of lack of jurisdiction under Article 28 of the Warsaw Convention and also on the ground of *forum non conveniens*. The following day, CPA answered the first and second causes of action, which had been brought on behalf of the Zousmers, the New York decedents.

Subsequently, on May 15, 1967, plaintiffs served an amended complaint which was identical to the original complaint except that it added a sixth cause of action on behalf of the estate of Donald Taylor, another Canadian citizen and resident. Promptly thereafter, defendants Douglas and Kollsman moved to dismiss the amended complaint because of improper service. For its part, defendant CPA moved on May 24, 1967, by order to show cause, to dismiss the third, fourth, fifth and sixth causes of action (i. e., those brought on behalf of the Canadian residents, now including Taylor as well) of the amended complaint on the same grounds urged in its May 11 motion.

On June 22, 1967, the state court granted the motions of Douglas and Kollsman and dismissed the amended complaint as against them on the grounds of improper service pursuant to CPLR § 3012(a). In both decisions, Justice Helman noted that the disposition was "without prejudice to any application plaintiffs may see fit to make to serve an amended complaint." As for CPA's motions, the third through fifth causes of action of the original complaint were dismissed with prejudice on the merits by Justice Helman on the grounds of lack of jurisdiction and *forum non conveniens*. CPA's second motion addressed to the third through sixth causes of action of the amended complaint was granted on the same grounds. In the court's order of August 11, 1967, settled upon the latter decision, the court, at defendant CPA's urging, also ordered the Zousmer plaintiff to serve an amended complaint stating any claims to be asserted against defendant CPA on behalf of the Zousmer estates within twenty days. It is to this final command that many of the complicated procedural problems herein are directly traceable.

Nothing further occurred until February 26, 1969, when the Zousmer plaintiff moved for summary judgment against defendant CPA on the new grounds that the airline tickets delivered to the Zousmers did not comply with the notice provisions of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000 (1934), otherwise known as the Warsaw Convention. By order of the New York Supreme Court dated April 18, 1969, Justice Fine denied the

motion with leave to renew after service of an amended complaint in compliance with Justice Helman's August 1967 order.

Therefore, on April 28, 1969, plaintiffs served a second amended complaint alleging claims, now based entirely upon the Warsaw Convention, on behalf of the Zousmer estates against defendant CPA only. CPA thereafter filed a timely petition removing the action to this court pursuant to 28 U.S.C.A. § 1441(a) and § 1446(b). Plaintiffs now seek to remand.

Defendant CPA contends that the action was properly removed on two separate grounds: (1) at the time of service of the last amended complaint on April 28, 1969, defendant CPA was a Canadian corporation and plaintiff Perry Zousmer (executor of the estates of Jesse and Ruth Zousmer) was a New York citizen, thereby establishing diversity of citizenship on the face of the complaint and allowing removal pursuant to 28 U. S.C.A. § 1332 and § 1441(a); and (2) alternatively, since plaintiff had abandoned his original allegations of negligence and breach of warranty against defendant CPA (as contained in his original and first amended complaints) and set forth a claim based entirely upon the provisions of the Warsaw Convention, the claim presented a federal question arising under a treaty of the United States and as such was removable pursuant to 28 U.S.C.A. § 1441(b).

Plaintiff Zousmer contends that the action was improvidently removed to this court in that (1) since defendant Kollsman, who was originally properly joined and served as a defendant in this action, is a New York citizen, and since plaintiff Zousmer is also a citizen of New York, the requisite diversity of citizenship is lacking; (2) a claim based on the Warsaw Convention does not "arise under" a treaty of the United States within the meaning of Section 1441(b); and (3) even assuming, as defendant contends, that a claim under the Warsaw Convention constitutes a federal question, it does not constitute a "separate and independent claim or cause of action" as required for removal under 28 U.S.C.A. § 1441(c).

■ Disposition of the diversity question turns upon this court's interpretation of the present status of the pleadings in this distinctively complicated litigation. CPA claims that "the present status of this action is solely the result of an election by the plaintiff to proceed against defendant Canadian Pacific alone herein by the service of the [second] amended complaint limiting its claims to controversies between plaintiff and a Canadian corporation." (Removal Petition, p. 5). It is thus CPA's position that the second amended complaint constitutes the sole and determinative pleading in this action and that as such the case involves only a New York plaintiff and a Canadian defendant. Plaintiff vehemently, and we believe properly, disputes this proposition. It appears clear from the record that at no point did plaintiff ever voluntarily "elect" to drop defendants Douglas and Kollsman from the action. Nor were the other original plaintiffs (i. e., the Canadian residents, the two Giroux and Hallam) ever voluntarily deleted as parties to the action. And more importantly, it is this court's belief that no court order in any of the earlier state court proceedings eliminated, or indeed intended to eliminate, any of these defendants or plaintiffs from the action.

It may be (although no such view has ever been articulated by defendant) that CPA's position rests not upon any voluntary election by plaintiff to drop certain parties to the action, but upon the law of supersedure. Even if this were so, however, such an argument must fail before the particular facts of this case. While it is undisputed that, as a general rule, an amended pleading supersedes the pleading preceding it, we find such a rule inapplicable here. It should be recalled that the first amended complaint was a duplicate of the original complaint but for the addition of a sixth cause of action on behalf of another Canadian resident. Although that

amended complaint was cast in appropriate form, it was never properly served under New York law and was therefore insufficient to obtain personal jurisdiction of the defendants. Defendant CPA itself labeled the pleading a "nullity" in correspondence with plaintiff's attorneys. The state court apparently agreed, for it granted motions to dismiss by all three of the defendants. Finding insufficient service of process, Justice Helman dismissed the amended complaint as to all causes of action asserted against defendants Douglas and Kollsman. For unexplained reasons (although perhaps because it recognized the continuing validity of the original complaint), defendant CPA, unlike its fellow defendants, did not move to dismiss the entire pleading for improper service, but rather sought dismissal on the merits (on other grounds) of the third through sixth causes of action brought against it on behalf of the four Canadian residents. This motion, too, was granted by Justice Helman, who noted in his memorandum decision of June 22, 1967, that plaintiffs had "requested leave to withdraw the amended complaint, due to their admitted failure to comply with CPLR 3012(a)."

■■■■■ Thus, whether plaintiffs actually withdrew their amended complaint or whether Justice Helman dismissed it for lack of jurisdiction, the pleading was clearly a nullity without legal effect; it was void from the very outset.[1] We conclude, therefore, that the first amended complaint had no effect whatsoever on the original complaint; it did not modify, nullify or supersede it. The authorities support this conclusion. For example, it is established that "when an amended answer is stricken from the files, the original answer stands as if no amended answer had been filed." 41 Am.Jur., Pleading § 313, at 508 (1942).

In the instant case, plaintiffs' first amended complaint was dismissed summarily as a jurisdictionally defective pleading; it was, in effect, "stricken from the files." In addition, this first amended complaint was more in the nature of a supplemental than an amended pleading. As noted above, it was a carbon copy of the original complaint but for the addition of a single party plaintiff. Thus, it sought not to correct or alter the original pleading, but rather to *add* to it. Such is the very essence of a supplemental pleading. And, as the case law has recognized:

> "[A]n amended pleading does not supersede the original pleading *where it is evident that it is not designed as a substitute therefor or intended to take its place,* as where it refers to its allegations, or expressly reaffirms them, or merely elaborates certain of them, or *merely augments the original pleading by additional allegations,* and in such cases the original pleading and the amendment are to be construed together." 71 C.J.S. Pleading § 321a, at 718 (1951). (Emphasis added.)

Finally, this court does not believe that Justice Helman intended the first amended complaint to supersede the original. Indeed, in his memorandum decision disposing of defendant CPA's motion to dismiss the third through sixth causes of action of the first amended complaint, he referred specifically to "an amended complaint on behalf of [the newly added Canadian] plaintiff." Thus, it would appear that when Justice Helman granted defendants Douglas and Kollsman's motions to dismiss the first amended complaint and stated that such disposition was "without prejudice to any application plaintiffs may see fit to make to serve an amended complaint," he was referring only to an amended complaint that would assert—hopefully properly

---

1. Cf. CPLR 304. This section states the fundamental rule that under New York law no action can even be deemed commenced until jurisdiction is acquired. Under the Federal Rules of Civil Procedure, too, if there is no proper service, the proceedings against the defendant are considered void from the outset. See, e. g., Williams v. Capital Transit Co., 94 U.S.App.D.C. 221, 215 F.2d 487, 490 (1954) (Danaher, J.).

this time—a sixth cause of action on behalf of the Canadian plaintiff Taylor against Douglas and Kollsman. Nowhere did the court suggest that it considered the plaintiffs' original complaint nullified or superseded, except insofar as the third through fifth causes of action against defendant CPA on behalf of the three Canadian plaintiffs were concerned. On the contrary, a fair reading of Justice Helman's rulings indicates that he never intended to dismiss any of the causes of action in the original complaint as against Douglas and Kollsman or the first two causes of action brought on behalf of the Zousmers against CPA. Understandably, Justice Helman's intention is of more than passing interest here, for the court is given considerable discretion in the area of supersedure. As has been pointed out by Professor Siegel on a related question:

"The practitioner should not assume that *every* amended or supplemental pleading must necessarily supersede the original pleading. That is the *general* rule; and with amendments as of course that do not come before the court for some reason, that is invariably the rule. But where the court is allowing an amended or supplemental pleading, it may in its order make such provision for supersedure as its discretion dictates. CPLR 3025 (d) is phrased to *give* the court that discretion." David D. Siegel, McKinney's Commentary, CPLR § 3025 (Supp. 1969). (Emphasis in original.)

One additional comment should be made regarding defendant CPA's own position on the question of supersedure. It would appear from the record that CPA did not, at the time of Justice Helman's rulings on the first amended complaint, contest the continuing validity of the original complaint. Indeed, the contrary is true. In a letter to Justice Helman dated July 7, 1967, counsel for defendant CPA wrote:

"It would appear that the present state of the pleadings with respect to the plaintiffs' claims against the defendants Douglas and Kollsman are *as stated in the original complaint* in view of the court's disposition of the motions on behalf of these two defendants and the plaintiffs' attorneys request to withdraw the amended complaint. The claims against the defendants Douglas and Kollsman are made on behalf of the estates of *Zousmer*, Giroux and Hallam; the claim on behalf of the estate of Taylor not having yet been instituted against the defendants Douglas and Kollsman in view of the dismissal of the amended complaint.

"However, the only claims left viable with respect to the defendant Canadian Pacific Air Lines are those on behalf of the estates of Mr. and Mrs. Zousmer. * * * Furthermore, the caption of the action on both *the original complaint* and the amended complaint should be amended with respect to all the defendants since only the claims of the Zousmers may be asserted against Canadian Pacific, et al., while additional claims on behalf of the other plaintiffs *are still viable* with respect to the defendants Kollsman and Douglas." (Emphasis added.)

At this point in the litigation, defendant CPA apparently entertained no doubts as to the very real and ongoing nature of the original complaint.

Defendant CPA does contend, however, that when on April 28, 1969, plaintiff served a *second* amended complaint alleging claims on behalf of the Zousmer estates against CPA alone, this pleading did supersede the original complaint and therefore limited the action solely to controversies between plaintiff Zousmer and defendant CPA, New York and Canadian residents respectively. We disagree.

It had been plaintiff's unswerving position that no such amended complaint was required, inasmuch as the original complaint was still on file in the state court (together with answers by all three defendants) and was in full force and effect. Plaintiff consistently maintained the position, which we have approved above, that Justice Helman had never

dismissed the original complaint as against defendants Douglas and Kollsman, nor that portion of the original complaint on behalf of the Zousmers against defendant CPA. It was only after Justice Fine denied plaintiff Zousmer's motion for summary judgment for failure to comply with Justice Helman's August 1967 order that plaintiff finally submitted, as ordered by the court, to serving such a second amended complaint. This pleading had been commanded by the precise language of the final decretal paragraph of Justice Helman's order, which stated: " * * * the plaintiffs shall serve an amended complaint seeking any damages to be asserted against said defendant Canadian Pacific Air Lines, Limited on behalf of the estates of Jesse Zousmer and Ruth Taylor Zousmer * * * "

The origin of this paragraph is of some significance to the decision at hand. It was apparently conceived by CPA and included in the order proposed and settled by CPA upon Justice Helman's memorandum decision of June 22, 1967. When plaintiff opposed inclusion of the entire paragraph suggested by CPA as mere surplusage, counsel for CPA replied that the only purpose for inserting the paragraph was to clarify the pleadings. In its letter to Justice Helman of July 7, 1967, defendant CPA's attorney stated that "the fourth decretal paragraph is included in defendant's proposed order because it appears to be the simplest method of *clarifying the situation.*" (Emphasis added.) There was no suggestion whatever that the amended complaint called for by the paragraph was intended to supersede the original complaint. Indeed, even when plaintiff Zousmer did finally serve the amended complaint demanded by the order, he took every precaution to avoid just such a construction. He was careful to set forth the full caption of the action, including the three Canadian plaintiffs and the two other defendants, Douglas and Kollsman, and to serve the new pleading on attorneys for all three defendants. It was clearly plaintiff's in-

tention that it be a pleading in addition to, or supplemental to, the original complaint, and, as noted earlier, the authorities permit an exception to the general rule of supersedure in such a situation.

■ Moreover, in related circumstances, this general rule has been held to have "no application to an *involuntary amendment made in accordance with an order of court* sustaining a motion of an adverse party to strike the pleading." 41 Am.Jur., Pleading, supra, at 508. (Emphasis added.) If anything is clear from the record, it is that plaintiff Zousmer did not serve the second amended complaint at his own election. Indeed, he put it off until the court order could no longer be avoided. As one court noted in an analogous situation:

"The rule undoubtedly is that where an amended pleading is filed all allegations in the former pleading are abandoned, unless set out in the amended pleading or referred to therein, but this rule, in the nature of things, has application to a *voluntary amendment.* The order of the court in the instant case directed that the averments be stricken from the petition, and gave [plaintiff] time to amend his petition to comply with the order. * * * The amended petition was framed in this respect by the court and not by the plaintiff * * *." Wiley v. Harrison, 105 Okl. 280, 232 P. 816, 817, 38 A.L.R. 1408 (1925). (Emphasis added.)

Prior to the *Wiley* case, on a similar set of facts, the Appellate Division of the New York Supreme Court had stated:

"It will be seen that by this drastic order the court, instead of the plaintiff or his attorney, substantially framed the complaint. * * *

"The order granted changes the complaint from the form in which it was originally constructed by the plaintiff's attorney * * * without permitting the pleader to plead the facts * * * upon which the allegations of the complaint originally could be

sustained." Parish v. Juckett, 147 App.Div. 424, 131 N.Y.S. 715, 716–717 (1911).

It is true that these latter cases are distinguishable from our own. In the instant action, unlike *Wiley* and *Parish*, the court was not in error in compelling plaintiff to submit an amended complaint, but rather, was engaging in a remedial effort to clarify the status of the pleadings. Nevertheless, we feel that the general rule of supersedure is equally inapplicable in both situations. Just as a plaintiff's course of pleadings should not be deemed bound by his involuntary compliance with an erroneous court order, neither should it be unfairly circumscribed by his involuntary compliance with a court order apparently directed not at elimination but, rather, only clarification of the issues.

In any event, where, as here, the intentions of both the plaintiff and the court are clear and it is obvious that no supersedure (except, of course, insofar as plaintiff Zousmer chose to change his theory of recovery as against defendant CPA) was ever intended, too strict a reliance on the niceties of procedural law would not serve the interests of justice. As Justice Rabin of the New York Supreme Court has noted:

"While procedural rules may not be ignored since they serve a salutary service, they may not be given a strained and technical interpretation, less justice be 'smothered by a too slavish adherence to the mere forms and technicalities of procedure.'" Biener v. Biener Pontiac, Inc., 7 Misc.2d 633, 166 N.Y.S.2d 669, 671 (1957).

We, therefore, refuse to hold that all of the New York and Canadian plaintiffs are out of court as to defendants Douglas and Kollsman. We prefer rather to construe all three of the plaintiffs' pleadings (that is, the original complaint and the two amended complaints) together. Such a construction leads to the following lineup of parties plaintiff and defendant: wrongful death claims on behalf of the estates of the two Zousmers, the two Giroux and Hallam are asserted against defendants Douglas and Kollsman on the grounds of negligence and breach of warranty, whereas wrongful death claims on behalf of the Zousmer estates alone are asserted against defendant CPA on the grounds of the Warsaw Convention.

Thus, defendant CPA's petition for removal, insofar as it is based on diversity of citizenship, must fail, for under the above listing of parties it is quite clear that plaintiff Zousmer has claims pending not only against defendant CPA, but also against defendants Douglas and Kollsman. Inasmuch as Kollsman, a proper party defendant, is a citizen of the same state as the plaintiff (that is, New York), the requisite diversity is lacking.

■■ We deal next with the alternative grounds for removal asserted by CPA that, since plaintiff Zousmer's claim against CPA is now based exclusively on the provisions of the Warsaw Convention, it is removable under 28 U.S.C.A. § 1441(b) as a "claim or right arising under the Constitution, *treaties* or laws of the United States." (Emphasis added.) The question then is whether a claim grounded on the Warsaw Convention presents a claim or right arising under a treaty of the United States within the meaning of Section 1441(b). Clearly, if the Convention did in fact create a cause of action, then the case at bar would present a federal question and removal would surely be in order. However, it is the rule of this Circuit that the Warsaw Convention does not in and of itself create an independent cause of action. Noel v. Linea Aeropostal Venezolana, 247 F.2d 677, 66 A.L. R.2d 997 (2d Cir. 1957). Nevertheless, defendant CPA contends that it is not essential that the treaty actually create a cause of action in order for the claim to "arise under" a treaty of the United States and be removable pursuant to Section 1441(b). Defendant urges (1) that the violations of the Warsaw Convention alleged by Zousmer against CPA in and of themselves make this a case arising under a treaty of the United

States, and (2) that international aviation matters based on the Warsaw Convention, like analogous matters of maritime law, should be decided on a uniform body of federal law. While, from a policy standpoint, these arguments may be persuasive and should perhaps invite legislative action, we cannot agree that such considerations bring this matter within the present purview of Section 1441(b).

■ The leading case on the question of removal under Section 1441(b) is Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). There, Justice Cardozo, speaking for a unanimous Court, said:

> "How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a *right or immunity created by* the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." (at 112, 57 S.Ct. at 97) (Emphasis added.)

Thus, for an action to be removable under Section 1441(b), the treaty or law in question must clearly create an actual right in the plaintiff, and such right must be an essential factor in his case. Cf. Andersen v. Bingham & G. Ry. Co., 169 F.2d 328, 14 A.L.R.2d 987 (10th Cir. 1948) (Safety Appliance Act); Jacobson v. New York, N.H. & H.R. Co., 206 F.2d 153 (1st Cir. 1953) (same); Fernandez v. Linea Aeropostal Venezolana, 156 F.Supp. 94 (S.D.N.Y.1957) (Civil Aeronautics Act of 1938); Moody v. McDaniel, 190 F.Supp. 24 (N.D.Miss. 1960) (Federal Aviation Act). In the instant case, there is no right to recover for death created expressly either by the Warsaw Convention or regulations promulgated thereunder. Nor do the treaty and regulations relied on by plaintiff constitute an essential element of his case. They create, at most, the standards and presumptions of liability by which the conduct of the defendant is to be judged in a proper local action brought to recover damages for wrongful death. See Moody v. McDaniel, supra, at 26. They merely outline, in Justice Cardozo's words, the "operative limits" of the cause of action granted plaintiff by local law. Gully v. First National Bank, supra, 299 U.S. at 118, 57 S.Ct. 96. As the Tenth Circuit noted in Andersen, supra, 169 F.2d at 329: "[N]ot every question of federal law lurking in the background or emerging necessarily places the suit in the class of one arising under the laws of the United States, within the meaning of the statute." Certainly, in the case at bar, the substance of plaintiff's claim is one based on local law. See Downing v. Howard, 162 F.2d 654, 656 (3d Cir. 1947); Winsor v. United Air Lines, Inc., 159 F.Supp. 856 (D.Del.1958).

Only one federal case directly in point has been cited by counsel or found by this court. In Winsor v. United Air Lines, Inc., supra, an action was originally filed in Delaware state court by plaintiff as the personal representative of the estate of a Newfoundland resident, a passenger aboard a Delaware airliner which crashed in Colorado during a Warsaw Convention flight. The defendant removed the case to federal court on the ground that plaintiff's claim arose under a treaty of the United States pursuant to Section 1441(b). In granting plaintiff's motion to remand, the court held (1) that the wrongful death statute of Colorado, and not the Warsaw Convention, created the cause of action, and (2) that, although it might be necessary in the course of the trial to construe the Convention, the necessity for such construction did not bring the matter within the ambit of Section 1441 (b). Thus, federal jurisdiction was found to be lacking. We are persuaded by the reasoning of *Winsor*.

One further argument suggests the impropriety of treating a Warsaw Convention claim as one "arising under" a treaty of the United States. It is quite apparent from the language of the Convention that its authors explicitly refrained from legislating on certain matters traditionally considered vital to the creation of a new right of action. As Judge Leibell noted in Komlos v. Compagnie Nationale Air France, 111 F. Supp. 393 (D.C.1952) at 403: "Although the Warsaw Convention attached a number of conditions to the right of action created by the *lex loci*, the Convention did not prescribe the person or persons who may bring the suit, or the person or persons who have a right or interest in the suit." The significance of these omissions is made clear by the following quotation from the *Moody* case, supra, which raised questions similar to those presented here only in relation to the Federal Aviation Act:

"To make a different approach to the question: Could plaintiffs pursue their stated claims in this court in the absence of a wrongful death statute in the State of Mississippi? Neither the statutes nor the regulations relied on by plaintiffs expressly create such a cause of action nor name the beneficiaries thereof, nor prescribe how, if at all, contributory negligence, comparative negligence, assumption of risk, measure of damages, limit of recovery or any other yardstick are to be applied on trial. Nor do these statutes or regulations fix any period of limitation within which suit must be filed. Thus, it is obvious that any trial court, under these circumstances, that attempted to proceed as if the cause were a 'case arising' under the Constitution or laws of the United States would be hopelessly lost in a no man's land of undeveloped law. It seems impossible, then, that these claims could be maintained upon any basis other than the wrongful death statute of Mississippi." 190 F.Supp. at 28.

Although the Warsaw Convention does include provisions with respect to venue, presumptions of liability, limitations on liability, and contributory negligence, nevertheless any federal court which presumed to grant removal jurisdiction to Warsaw claims under Section 1441(b) would still find itself mired in a "no man's land of undeveloped law."

Thus, for all these reasons, we are compelled to conclude that the instant case does not present a claim or right arising under a treaty of the United States and that removal under Section 1441(b) is, therefore, not proper.

■ One additional ground for removal has also been suggested by defendant CPA. CPA contends that plaintiff Zousmer's claim against it under the Warsaw Convention constitutes a "separate and independent claim" and as such is removable pursuant to 28 U.S.C.A. § 1441(c). That section provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

Thus, even if we were to assume that a claim under the Warsaw Convention did constitute a removable federal question under Section 1441(b) (and we have just found that it does not), its ultimate removability under Section 1441(c) would depend solely on whether or not it constituted a "separate and independent claim or cause of action."

As we view the present state of the pleadings, in light of our disposition of the supersedure question herein, plaintiff Zousmer has asserted valid causes of action for the wrongful death of his decedents against *all* three of the defendants, including Douglas and Kollsman as well as CPA. Under Section 1441(c), therefore, even assuming that Zousmer's claim against CPA would be removable if sued upon alone (and it undoubtedly would be—if not as a federal question,

then certainly on diversity grounds), it must, in addition, be found to be separate and independent from Zousmer's other claims (against defendants Douglas and Kollsman) with which it is joined.

In American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the Supreme Court's leading construction of Section 1441(c) to date, the Court emphasized that one of Congress' motivating purposes in adopting the "separate and independent" test for removability was to "abridge the right of removal" from state courts. Id. at 10, 71 S.Ct. at 538. In *Finn*, the plaintiff had sued three defendants (a local insurance agent and two foreign insurance companies), joining them in the alternative, to recover for a fire loss. The Court found that removal had been improper, concluding that

> " * * * where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." Id. at 14, 71 S.Ct. at 540.

Based on this language, the Court of Appeals for the Tenth Circuit has stated:

> "Applying this rule, we look to plaintiff's complaint which controls. He seeks relief for a single wrong, the alleged negligence of the Institute and its employees. A single recovery is sought. A pleading which alleges but one wrong, for which single relief is sought, cannot constitute a separate and independent claim, *no matter how many defendants are said to be liable therefor, or how diverse their basis of liability.*" Gray v. New Mexico Military Institute, 249 F.2d 28, 31–32 (10th Cir. 1957). (Emphasis added.)

As in *Finn*, the plaintiff in the instant case asserts a single wrongful act, namely, the wrongful invasion of each decedent's right of bodily safety. In each instance plaintiff has suffered but a single injury, no matter how many different defendants may be responsible therefor. Of no consequence either is the fact that plaintiff Zousmer has asserted a different theory of recovery against CPA (i. e., the Warsaw Convention) than he has against Douglas and Kollsman (i. e., negligence and breach of warranty). As was stated in a somewhat similar situation:

> "The fact that plaintiff claims both in tort for negligence and under the maritime law for unseaworthiness of the vessel does not automatically make them 'separate and independent,' where the ultimate legal objective remains the same. Section 1441(c) requires a separate and independent *claim,* not just a separate and independent *theory.*" Durham v. Irish Shipping Ltd., 204 F.Supp. 68, 69 (E.D.Pa.1960). (Emphasis added.)

Finally, no finding of "separate and independent" is warranted simply because plaintiff's claim against CPA is based on a treaty of the United States. Indeed, as regards this particular treaty, it may be that the contrary is true. As noted above, it is the rule of this Circuit that the Warsaw Convention does not of itself create an independent cause of action. Noel v. Linea Aeropostal Venezolana, supra. As Chief Judge Lumbard there stated (247 F.2d at 679):

> " * * * [W]e agree with our prior decision in Komlos v. Compagnie Nationale Air France, 2 Cir., 1953, 209 F.2d 436, 438, which impliedly agreed with Judge Leibell's decision, Komlos v. Compagnie Nationale Air France, D.C.S.D.N.Y.1952, 111 F.Supp. 393, that the Convention did not create an independent right of action. As Judge Leibell pointed out, Secretary of State Hull's letter to President Roosevelt, dated March 31, 1934, indicated that *the effect of Article 17* on which plaintiffs rely for their argument *was only to create a presumption of liability, leaving it for local law to grant the right of action.*" (Emphasis added.)

In this regard, it should be noted that New York law does in fact create a cause of action for wrongful death. Decedent Estate Law § 130. (We are advised that

Japanese law as well permits such an action.) A wrongful death action may, however, be based on any of a number of diverse theories, and that is precisely the situation in the case at bar. Plaintiff Zousmer has simply asserted wrongful death claims against all three defendants to recover for a single wrong to each of his decedents. That differing theories of negligence, breach of warranty and the Warsaw Convention underlie these claims cannot and does not lend "separate and independent" status to any one of them. Indeed, defendant CPA's papers appear to concede this proposition in so many words:

> "The question of whether a claim for wrongful death pursuant to the provisions of the Warsaw Convention is a separate and independent claim from wrongful death claims against other parties based upon other grounds, was comprehensively discussed by this Court and the Second Circuit Court of Appeals in Komlos v. Compagnie Nationale Air France. * * * In that case it was held that in an action wherein plaintiff had alleged both negligence and a claim under the Warsaw Convention, there was a single indivisible cause of action with several items of damages." (Defendant's Supplemental Memorandum, p. 3).

We agree with CPA's characterization of the *Komlos* decisions, and find that Zousmer's claim against CPA does not rise to the standard of "separate and independent" demanded by Section 1441 (c).

In all candor, we must admit that the questions of removal presented by this case—under both Sections 1441 (b) and 1441(c)—are not by any means free of all doubt. Judge Murphy's wry description some years ago of the state of the law regarding Section 1441(c) bears pointedly on the various removal problems here encountered: "[I]t is not an exaggeration to say that at least on the surface the field luxuriates in a riotous uncertainty." Harper v. Sonnabend, 182 F.Supp. 594, 595 (S.D.N.Y. 1960). This uncertainty, however,

strengthens our conviction that remand is the proper course in the case at bar. As the *Winsor* court stated, "* * * the very existence of doubt, rather than helping defendant, provides additional reasons for a remand for it is settled that where the jurisdiction of a removed case is questionable, the District Court should decline jurisdiction." 159 F. Supp. at 860.

In view of the foregoing, plaintiff's motion to remand is granted.

It is so ordered.