**FIRST NAT. BANK & TRUST CO. OF TULSA**

v.

**INGERTON.**

No. 4640.

United States Court of Appeals, Tenth Circuit.

Oct. 27, 1953.

Rehearing Denied Nov. 21, 1953.

John M. Winters, Jr., Horace D. Ballaine, Hess Crossland, Tulsa, Okl., W. Clayton Carpenter and Thomas Keely, Denver, Colo., for appellant.

Richard H. Simon, Englewood, Colo., for appellee.

Before BRATTON, HUXMAN and MURRAH, United States Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from the order of the trial court sustaining a motion to quash the service of summons and the complaint. Service of summons was attempted to be made on appellee, Estelle Garner Ingerton, under Rule 4(d) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The officer's return of service recited that the service on her was made by leaving a copy of the summons with "Richard Ingerton, a responsible person who is a resident in or resides at the usual place of abode of said Estelle Garner Ingerton at 1617 South Sherman St., * * * at Denver * * *." The correctness of the decision appealed from depends upon whether the designated address was appellee's "usual place of abode" at the time of such service.

Appellee together with her husband, W. H. Ingerton, Jr., and their minor son and daughter resided at Amarillo, Texas, where they owned their home. Ingerton owned a number of race horses. Appellee may have owned some of them. They followed the races at various race tracks around the country. In September, 1951, they sold their home in Amarillo, Texas, and moved to Raton, New Mexico, where they lived at the El Portal Hotel. At times when their children were at home, they rented several rooms, while at other times they rented only one room. They continued to maintain a residence there until August 13, 1952. During all that time they kept their clothing and other personal effects as well as some furniture there. Their remaining furniture was stored in a warehouse in Raton. All their mail was delivered at their address in the Hotel all this time. Their daughter was married at that address in 1951 and went to live

with her husband at Liberal, Kansas. The latter part of June or the first part of July, 1952, Ingerton came to Denver with his race horses. With the assistance of Mrs. Minnie Tucker, the wife of a friend, he arranged for a house in Denver so that his daughter, who was eight and one-half months pregnant, could with her husband come to Denver to escape the Kansas heat. The house was rented for one month and the rent was advanced by Ingerton by giving a check therefor. When his son-in-law and daughter came to Denver, the son-in-law repaid him in cash the rent so advanced. Appellee and her husband occupied the house at times and visited with their minor son, their daughter and son-in-law. They received no mail there. Appellee gave no forwarding address when she came to Denver. On one occasion, while in Denver, she went to New Mexico to pick up her mail. On July 28, 1952, the day the summons was left with the son, appellee was not at the house. She was down town with Mrs. Tucker. She left Denver without returning to the house in her own car and that evening the son-in-law and daughter also vacated the house and left for Amarillo to await the birth of their child.

Rule 4(d) (1) authorizes residence service by leaving a copy of the process at one's dwelling house "or usual place of abode * * *." Not many federal cases have construed this rule. There are innumerable state decisions that have construed similar provisions under state procedure. They are in hopeless and irreconcilable conflict and no useful purpose would be served by analyzing them. We see no conflict in principle in the federal cases which have construed this provision.[1] They all recognize that the word "usual" has significance and must be given consideration in determining the validity of such service. Thus Earle v. McVeigh points out that the place where one is temporarily residing is not his usual place of abode, and in McFad-

1. These cases are Earle v. McVeigh, 91 U. S. 503, 23 L.Ed. 398; Skidmore v. Green, D.C., 33 F.Supp. 529; Leigh v. Lynton, D.C., 9 F.R.D. 28; McFadden v. Shore, D.C., 60 F.Supp. 8, 9; and Rovinski v. Rowe, 6 Cir., 131 F.2d 687.

den v. Shore, the court approved the rule that "where temporary residence is established away from the normal or usual residence the 'place of abode' is the usual residence regardless of the fact that defendant may be occupying the temporary residence at the time of service." This principle is recognized in the remaining cases cited in Footnote 1. The difficulty, if any, arises as always when an established principle of law is applied to a given state of facts.

Where appellee had her usual place of abode was a question of fact and we cannot say that the trial court erred in concluding that it was at the El Portal Hotel at the time of this attempted service. It must be conceded that prior to coming to Raton appellee and her husband resided at and had as their principal place of abode Amarillo and that after selling their home and coming to Raton, that became their principal place of abode. They had their personal belongings and some of their furniture in the Hotel. They received their mail there. Because of their business they led a transitory life and were absent much of the time, but when not out on circuit, they lived at the El Portal Hotel. The temporary arrangement in Denver did not, in our opinion, alter this status. It was a temporary arrangement during the summer. The rent was paid by their son-in-law and appellee and her children stayed there, but they did not relinquish their residence at the El Portal Hotel. Their belongings were there and they continued to receive their mail there.

The judgment appealed from is, therefore, Affirmed.

MURRAH, Circuit Judge (dissenting).

I suppose everyone of responsible age is deemed, for the purpose of service, to have a "usual place of abode". It is not necessarily his place of residence, for he may have both a residence and a usual place of abode. Nor is his usual place of abode necessarily his last place of abode, for he may change it every month. Earle v. McVeigh, 91 U.S. 503, 23 L.Ed. 398. Most courts agree that the usual place of abode is where a person is living at the particular time service is made. See cases collected State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 127 A.L.R. 1267.

The purpose of process is to give notice as a prerequisite to jurisdiction. Where, therefore, the actual notice of the suit is received, Rule 4(d) (1), F.R.C.P. should be liberally construed to effectuate service. Rovinski v. Rowe, 6 Cir., 131 F.2d 687. In determining the "usual place of abode" for the purpose of notice and service, consideration ought undeniably be given to the living habits of the defendant. If the defendant is an itinerant without any fixed dwelling or residence, or if the abode is not the residence, the migratory nature of the defendant becomes important to the question of usual place of abode.

The defendant here had lived in Amarillo, Texas, but at the time of the attempted service she neither lived, dwelled nor resided there. She occupied a room in a hotel in Raton, New Mexico, where she had come with her husband to race their horses, and she remained there on a monthly basis, occupying one room unless some member of the family came to visit. She intended to remain at Raton at least during the racing season there, but after an argument with the racing authorities, her husband said "I am going to quit Raton—I am going to take my horses up to Denver." The husband spoke of different places he thought about going. When they left, the defendant paid the rent on one room at the hotel for one month and until August 13, 1952. She left some personal belongings there, but the evidence is undisputed that she never returned to Raton to live or even stay one night. Instead, she called the hotel to request that her personal belongings, including some furniture, be turned over to a storage company.

Coming to Denver with his horses, the husband rented a house and paid the rent. There was testimony, and the trial court found, that the son-in-law reimbursed the husband, but undeniably the whole family lived in Denver where the

process was attempted to be served. When the process officer first called at the house, he was informed by the daughter that the defendant live there but was "down town". When he returned, he was informed by the son that she "had not returned". There is no positive testimony that she did not return, the daughter merely testifying that to her knowledge she didn't. The plain inference is that she either returned or left in flight to avoid process.

The trial court construed the evidence to indicate "very clearly that this may have been a temporary residing place of Mrs. Ingerton at the time this service was attempted * * * but was not her dwelling house or permanent place of abode." But there was nothing in the record to indicate that the defendant's usual place of abode was anything more than her temporary residence. Indeed, the record clearly shows that as race horse owners, the Ingertons' usual place of abode was wherever their horses happened to be running—at this particular time it was Denver, where the process was served on the defendant's son.

I would sustain the service.