975 F.2d 1569
 Charles Keith CAMPBELL, Plaintiff-Appellee/Cross-Appellant,
and
Alice Campbell, Plaintiff-Appellee,
v.
William L. BARTLETT; Roy Garrison; Harold Chandler; R.E.
Garrison Trucking, Inc.; United States Fire
Insurance Company,
Defendants-Appellants/Cross-Appellees.
 Nos. 88-2711, 88-2854.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 6, 1992.
 
 John A. Klecan of Butt, Thornton & Baehr, P.C., Albuquerque, N.M. (David M. Houliston of Butt, Thornton & Baehr, P.C., with him on the brief), for defendants-appellants/cross-appellees.
 Lisa K. Durrett of Durrett, Jordon & Durrett, P.C., Alamogordo, N.M. (Charles W. Durrett of Durrett, Jordon & Durrett, P.C., with her on the brief), for plaintiff-appellee/cross-appellant.
 Before ANDERSON, HOLLOWAY, and EBEL, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The defendants-appellants, William L. Bartlett, R.E. Garrison Trucking, Inc. (Garrison Trucking), and the United States Fire Insurance Co. (USFIC), appeal from a judgment that the trial court entered following a jury verdict in favor of the plaintiff-appellee, Charles Keith Campbell, in a negligence action, and from an order that the trial court entered denying the defendants' motions for a new trial and for a judgment notwithstanding the verdict. In a crossappeal, Campbell appeals from a directed verdict, the result of which was to remove from the jury's deliberations Campbell's claim against Garrison Trucking for punitive damages.[1] We affirm.
 
 
 2
 * As he delivered a truckload of meat from Iowa to Arizona on October 18, 1986, Campbell's vehicle collided with another tractor-trailer rig in an accident in New Mexico. At dusk, just southwest of Alamogordo on highway U.S. 70, Campbell noticed that another westbound truck in the right-hand lane ahead of him was beginning to turn onto the shoulder. I Supp.R. 41, 43. As Campbell changed to the left lane in order to pass, the other driver, Bartlett, began to make a U-turn across the four-lane highway. Id. at 44. When Campbell was unable either to brake his truck or to steer out of the path of the other vehicle, the two tractors collided. Id. at 44-46.
 
 
 3
 Smelling a strong odor of alcohol in the back of an ambulance, a New Mexico state police officer placed Bartlett under arrest. II Supp.R. 306-07. The officer subsequently cited Bartlett for traffic offenses including driving while intoxicated, or "DWI." Id. at 311-12. A blood test showed that Bartlett's blood contained ".15 grams percent of alcohol"; a toxicologist estimated that Bartlett's blood alcohol content at the moment the accident occurred had been 0.18. Id. at 282, 285. Shortly after the accident, Bartlett disappeared from an Alamogordo hospital.
 
 
 4
 In June 1987, Campbell filed this diversity action against Bartlett and Bartlett's employer, Garrison Trucking, in the United States District Court for the District of New Mexico. Campbell alleged that the wreck had resulted from Bartlett's negligence, and that the trucking firm was liable for the negligence of its employee. I R.Doc. 1.[2] Bartlett was not served personally with the summons and complaint, and the attorneys who represented him were unable to obtain either his assistance in preparing a defense or his attendance at the two-day jury trial in July 1988. I Supp.R. 4.
 
 
 5
 Prior to trial, all defendants stipulated as to liability for negligence, leaving only the issue of compensatory and punitive damages to be tried. At trial, the jury awarded Campbell $150,000 in compensatory damages against Bartlett and Garrison Trucking as well as $50,000 in punitive damages against Bartlett. I R.Doc. 104.[3] Under the judgment that the trial court entered: (1) Bartlett and Garrison Trucking were made liable to Campbell jointly and severally for the compensatory damages; (2) Bartlett was made liable to Campbell for the punitive damages award; and (3) USFIC was made liable for the entire damage award of $200,000. I R.Doc. 111.
 
 II
 
 6
 Rule 4(c)(2)(C)(i) of the Federal Rules of Civil Procedure allows a party to serve a summons and complaint "pursuant to the law of the State in which the district court is held." Absent defendant Bartlett was served with the summons and complaint under the New Mexico Supreme Court rule that allows a party to substitute personal service with service effected by posting the summons and complaint at a defendant's "usual place of abode" and by mailing the process to "his last known mailing address." See N.M.S.Ct.R.Ann. 1-004(F)(1) (Michie 1992).[4]
 
 
 7
 After filing this action, Campbell initially attempted to have the summons and complaint served on defendant Bartlett at the address that the truck driver had listed as his residence: Route 1, Box 364, Addison, Alabama.[5] Following this attempted service the defendants filed a motion to quash the service. In support of the motion, which was the second such motion filed,[6] the defendants submitted evidence that as a result of a foreclosure the residence at Box 364 had been vacant on the date listed on the return of service. I R. Doc. 78 (affidavit of Klein). The defendants presented further evidence that the address on the return of service was erroneous. In attempting service on Bartlett, a deputy sheriff had found the residence at Box 364 to be vacant. I R.Doc. 93, Ex. A. The deputy sheriff then had posted the summons and complaint at Box 37C, which was the residence of Bartlett's sister, rather than at the address listed on the return of service. Id. The deputy had attempted service at Box 37C because the chief deputy in the sheriff's office stated that Bartlett "sometimes lived" with the sister when he was not driving a truck.[7]
 
 
 8
 The district judge denied the second motion to quash in a written Memorandum Opinion and Order. The judge concluded that "[i]n light of the mobile lifestyle of defendant ... service has been effected pursuant to the statute in a manner reasonably calculated to give defendant actual notice of the proceedings and an opportunity to be heard." I R.Doc. 97, at 5. The court's order also stated Campbell mailed copies to Box 364, Addison, Alabama, as Bartlett's last known mailing address, id. at 4, and no issue is raised on appeal about the sufficiency of the mailing under the rule.
 
 
 9
 On appeal the defendants present the issue of whether the evidence, including the showing that Bartlett "sometimes lived" at his sister's residence when not on the road, was sufficient to establish that her home was his "usual place of abode," and whether the posting at such abode satisfied due process.[8] Because the appellants' challenge to the sufficiency of the service involves the determination of whether facts--the frequency and nature of Bartlett's visits to his sister's residence--satisfy a prescribed standard--"usual place of abode"--it is a mixed question of fact and law.[9] Similarly, the appellants' challenge to the attempted service on the basis that it did not satisfy due process raises an issue of whether the facts satisfy a legal standard. A review de novo is appropriate because the mixed questions involve solely a "consideration of legal principles" rather than factual issues.[10]
 
 
 10
 Our question is whether the home of Bartlett's sister qualified as his "usual place of abode." The defendants rely in part upon the requirement of a strict construction of the substituted service rule. Moya v. Catholic Archdiocese, 92 N.M. 278, 587 P.2d 425, 426 (1978). The defendants have argued that under a strict construction of the rule the chief deputy's statement concerning Bartlett's sometimes living at his sister's residence when not on the road was inadequate evidence as a matter of law to establish that her home was his "usual" place of abode. In response, Campbell has adopted a broader reading of the term "usual place of abode." Campbell has argued that the sister's residence was Bartlett's "usual" place of abode in view of the overall circumstances--the defendant was a truck driver whose residence recently had been foreclosed, who was in trouble with the law, and who may not have resided at any permanent address more frequently than he did at his sister's residence.
 
 
 11
 We agree with the trial judge that the term "usual place of abode" should be construed "in light of the mobile lifestyle of defendant." The New Mexico Supreme Court has defined the term "usual place of abode" as "the customary place of abode at the very moment the writ is left posted." Vann Tool Co., 566 P.2d at 95. In general, the New Mexico Supreme Court has recognized that "usual place of abode" is a concept that must be "decided on the specific facts of each case." Household Fin. Corp. v. McDevitt, 84 N.M. 465, 505 P.2d 60, 61 (1973). Moreover, the term "usual" is not irrelevant because it "has significance and must be given consideration." First Nat'l Bank & Trust Co. v. Ingerton, 207 F.2d 793, 794 (10th Cir.1953).
 
 
 12
 Campbell presented the trial court with the uncontroverted evidence that at the time of the posting Bartlett was living at least "sometimes" with his sister. The chief deputy stated that Bartlett "sometimes lived" with his sister. First, the deputy's use of the word "lived" rather than words such as "stayed" or "visited" is important because it suggested a relatively more significant arrangement. Bartlett acknowledged at the time of the accident that he could be difficult to contact; he told a New Mexico State Police officer that he was "more likely" to receive mail sent to the Lordsburg truck stop than mail sent to his listed Alabama residence. I R.Doc. 93, Ex. D. The circumstances suggest that at the time of the service, Bartlett may have been leading an even more transient lifestyle than usual; his most recent address known to the parties was vacant as a result of a foreclosure, I R.Doc. 78, and he faced an outstanding bench warrant in New Mexico, I R.Doc. 20, Ex. C. And, the deputy's affidavit indicated that Bartlett's living arrangement with his sister continued at the time of the posting.
 
 
 13
 While the showing is not strong, we hold that Campbell carried his burden of demonstrating that the process was posted at Bartlett's "usual place of abode." See Systems Signs Supplies v. United States Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir.1990). None of the parties have argued that Bartlett maintained a more permanent residence elsewhere. In light of the recent loss of Bartlett's last known, permanent residence in a foreclosure action and the chief deputy's testimony that Bartlett was living with the sister sometimes between jobs as a trucker, the evidence did not indicate a more desirable place for service. We are persuaded that Campbell effected valid service-by-posting.
 
 
 14
 The substituted service on Bartlett also satisfied the requirements of due process. In general, due process requires that the form of notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Posting at the residence of Bartlett's sister was not, as the defendants have argued, little more than a "mere gesture." Id. at 315, 70 S.Ct. at 657. To the contrary, posting at that residence was reasonable "under all the circumstances."
 
 III
 
 15
 The New Mexico courts explain that punitive damages may be awarded "to punish a defendant" and to serve "as a deterrent and warning for others." Gonzales v. Sansoy, 103 N.M. 127, 703 P.2d 904, 906 (Ct.App.1984). The defendants argue that the district judge erred in allowing the jury to award punitive damages against Bartlett because these two public policy goals were not served by imposing punitive damages against an absent defendant. The defendants raised the issue in a motion for judgment n.o.v., I R.Doc. 115, which the trial judge denied without explanation, id. Doc. 121. We review de novo the purely legal question presented on appeal, whether under New Mexico law a court may impose punitive damages against an absent party.
 
 
 16
 We cannot agree with the defendants that the punitive damages award against Bartlett served no deterrent purpose. The appellants assert that Bartlett cannot have been deterred by the award because they presume he "has no way of knowing the jury result." Appellants' Br. at 19. On its face, this argument is not persuasive. While he was not present in the courtroom when the verdict was announced, defendant Bartlett may well have learned the result later so that the deterrence policy is served. Moreover, the defendants fail to acknowledge the possibility that a punitive damages award against an absent defendant could serve "as a warning to others," one recognized policy objective. Stewart v. Potter, 44 N.M. 460, 104 P.2d 736, 740 (1940) (emphasis added). For example, the award of punitive damages against Bartlett could serve as a warning to other truck drivers of the possible civil consequences of driving drunk. We are not convinced, then, that the punitive damages award against the absent defendant was faulty because it failed to serve the stated public policy objectives.
 
 
 17
 We also find unpersuasive the defendants' analogy between an absent defendant and the personal representative of a deceased tortfeasor, a party against whom a majority of jurisdictions do not allow the imposition of punitive damages. See, e.g., Barnes v. Smith, 305 F.2d 226, 231 (10th Cir.1962) (trial court applying New Mexico law did not err in refusing to allow jury to consider awarding punitive damages against defendant executrix). Here, however, punitive damages could at least potentially deter the absent defendant, unlike a deceased tortfeasor, from repeating the conduct upon which the award was based.
 
 
 18
 The defendants further argue that due process requires a heightened standard of proof of punitive damages--proof by clear and convincing evidence. In support of the proposition, they characterize punitive damages as quasi-criminal sanctions which are subject to procedural protections of the Due Process Clause of the Fourteenth Amendment. See, e.g., In re Winship, 397 U.S. 358, 361-64, 90 S.Ct. 1068, 1070-72, 25 L.Ed.2d 368 (1970) (explaining due process requires higher standard of proof for criminal convictions because of the important liberty interests and stigmatization at stake); see also Addington v. Texas, 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979) (holding due process requires clear-and-convincing standard of proof in civil commitment proceedings). Because the trial court instructed the jury to determine whether to award punitive damages under the preponderance-of-the-evidence standard, II Supp.R. 426-27, the defendants have urged us to set aside the award.
 
 
 19
 The time for any objection to the charge on the burden of proof required was necessarily when the instructions were formulated. However, at a brief, on-the-record conference on jury instructions, the defendants made only one objection unrelated to the burden of proving punitive damages. II Supp.R. 345-46. The appellants' failure to object to the instruction concerning the burden of proof of punitive damages thus implicates the provision in Rule 51 that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. Because they failed to interpose a specific objection to the instruction concerning the burden of proof, we will review the issue only for plain error. See, e.g., Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1515-16 (10th Cir.1984) (explaining if no objection made before the jury retires, "we only review an instruction that is 'patently plainly erroneous and prejudicial.' "), aff'd, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); Allen v. Nelson Dodd Produce Co., 207 F.2d 296, 297-98 (10th Cir.1953) (noting as exception to general rule that appeals court may review for fundamental error instruction to which no objection was made).[11]
 
 
 20
 The court's instructions correctly applied New Mexico law requiring proof of punitive damages by a preponderance of the evidence. See Jessen v. National Excess Ins. Co., 108 N.M. 625, 776 P.2d 1244, 1247-48 (1989) (explaining preponderance-of-the-evidence standard is "appropriate" for proving punitive damages in New Mexico); cf. United Nuclear Corp. v. Allendale Mut. Ins. Co., 103 N.M. 480, 709 P.2d 649, 653-54 (1985) (rejecting requirement of proof of punitive damages under heightened standard). In addition, the United States Supreme Court has not held that due process requires a heightened standard of proof of punitive damages. Addressing the issue, the Court explained:
 
 
 21
 We have considered the arguments raised by [some of the parties] as to the constitutional necessity of imposing a standard of proof of punitive damages higher than "preponderance of the evidence." There is much to be said in favor of a State's requiring, as many do, a standard of "clear and convincing evidence" or, even, "beyond a reasonable doubt," as in the criminal context. We are not persuaded, however, that the Due Process Clause requires that much.
 
 
 22
 Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. ----, ---- n. 11, 111 S.Ct. 1032, 1046 n. 11, 113 L.Ed.2d 1 (1991) (citations omitted); see also Galjour v. General Am. Tank Car Corp., 764 F.Supp. 1093, 1101 (E.D.La.1991) (interpreting footnote 11 in Haslip as a holding that the preponderance-of-the-evidence standard satisfies due process). We thus find no plain error in the court's instructions concerning the burden of proof for awarding punitive damages.
 
 IV
 
 23
 The defendants next urge us to set aside the jury's award of $150,000 in compensatory damages to Campbell and to remand for a new trial of damages. They contend that the district court erred in denying their motion for a new trial of damages because the award is excessive and is not supported by the evidence. They also argue that the size of the award reflects that it was the result of "passion and prejudice" attributable to the evidence concerning Bartlett's intoxication.[12]
 
 
 24
 We begin our analysis by noting that a "motion for a new trial on the ground that the verdict of the jury is against the weight of the evidence is normally one of fact and not of law and is addressed to the discretion of the trial court." Locke v. Atchison, Topeka & Santa Fe Ry., 309 F.2d 811, 817 (10th Cir.1962); see also, e.g., Richardson v. City of Albuquerque, 857 F.2d 727, 730 (10th Cir.1988). Thus we review a court's ruling denying such a motion for a new trial for "a manifest abuse of discretion." Richardson, 857 F.2d at 730; see also, e.g., Locke, 309 F.2d at 817. In order to establish an abuse of discretion, the party that moved unsuccessfully for a new trial on the basis of an excessive verdict carries the heavy burden of demonstrating that the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." Locke, 309 F.2d at 817; see also, e.g., D.T. v. Independent School Dist. No. 16, 894 F.2d 1176, 1194 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990). In applying the abuse of discretion standard, we are also mindful that "absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." Barnes v. Smith, 305 F.2d 226, 228 (10th Cir.1962). We note at the outset that the defendants have not challenged the court's instructions to the jury that outlined the elements of damages.[13]
 
 
 25
 One factor the jury was entitled to consider was the "nature, extent and duration of the injury." II Supp.R. 420. Among other testimony relevant to this category, Campbell recalled that upon impact in the accident he was thrown against the truck door and was "knocked out" briefly. I Supp.R. 46-47. Campbell testified that as of trial he still was experiencing "some tingling," pain, and swelling in his legs and feet as well as pain in his lower back, shoulders, and neck, and that walking was painful. Id. at 93-95. Campbell testified that the pain had limited his driving somewhat, and that after the accident he could no longer unload trailers. Id. at 93-94. Such testimony would have given the jury a basis for concluding that Campbell was experiencing continuing symptoms of his injuries, serving as a factor in the damages award.
 
 
 26
 The judge instructed the jury that it could award damages for "pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury." II Supp.R. 420. The defendants argue that significant damages for pain and suffering would be unreasonable in view of Campbell's relatively superficial injuries. Applying our deferential standard of review to the evidence, however, we disagree. An orthopedic surgeon testified that Campbell reported pain in his neck, spine, and back that the doctor believed was related to the accident. I Supp.R. 167. The doctor testified that Campbell would experience chronic pain ("[h]e will have a painful ... bothersome existence"). Id. at 166. The physician rated Campbell's physical impairment overall as a 35 percent disability; he estimated that even under more conservative rating criteria, Campbell was five or 10 percent disabled. Id. at 167, 173-75. In addition, the jury could have considered Campbell's testimony concerning the trauma of the accident and his pain and suffering. The amount of any award in this category was left to the jury's discretion. The trial judge instructed the jurors that the "guide for ... determining compensation for pain and suffering ... if any, is your conscience to compensate the Plaintiff with fairness to all parties." II Supp.R. 420.
 
 
 27
 In view of all the evidence, we conclude that a jury following this instruction properly could have awarded substantial damages for pain and suffering. The court instructed the jury that a person of Campbell's age on the average has a life expectancy of 26.5 years. Id. at 421-22. If it found that Campbell would suffer chronic pain as a result of the accident the jury reasonably could have awarded damages to compensate him for 26 years or more of some suffering. In sum, even if we knew that a significant portion of the $150,000 general compensatory verdict was for pain and suffering, we would not disturb the verdict.
 
 
 28
 The jury also was entitled to consider awarding damages for expenses for "medical care, treatment and services received ... and reasonably certain to be received in the future." II Supp.R. 420. A physician estimated that Campbell might incur expenses for outpatient medical care of from $600 to $1,000 a year for several years. I Supp.R. 165-66. We conclude the evidence was sufficient for the jury to make an award in this category.
 
 
 29
 The judge instructed the jury that it could consider awarding damages related to Campbell's sale of his trailer after the accident. Campbell testified that he was forced to sell his trailer because his tractor had been totaled in the accident and he was unable to continue making the payments. I Supp.R. 85. In this category, the court allowed the jury to consider damages for Campbell's loss of any profits that he could have earned after the accident and prior to trial, had he still owned a trailer. II Supp.R. 420. Campbell's wife, who was his bookkeeper, testified that she had calculated that her husband had lost $32,467 after he returned to work because he no longer owned a trailer. Id. at 260-63. In addition, the court allowed the jury to award Campbell damages for his lost equity in the trailer that resulted from a forced sale. Id. at 420. Campbell estimated his lost equity at approximately $6,950. I Supp.R. 87. Again, the evidence provided the jury with a reasonable basis for awarding substantial damages in this category.
 
 
 30
 The judge instructed the jury that it could award damages for Campbell's lost earnings, past and future. II Supp.R. 419-20. Campbell's wife explained at trial the computations she had made to develop his claim for $21,130 for lost wages during the period he was off work after the accident. II Supp.R. 254-55, 256-58. We view the appellants' contention that the figure was inflated to be a fact issue that was for the jury to resolve. Also, under an estimate prepared by Campbell's wife, if he worked 15 more years he would need to pay approximately $14,000 in loading costs as a result of his inability to load and unload trucks. II Supp.R. 264-65. The jury reasonably could have awarded damages for lost earnings.
 
 
 31
 In light of all the evidence, we cannot agree that the compensatory verdict of $150,000 was excessive.[14] On this record, even if the jury discounted some of Campbell's documented claims for, and estimates of, specific damages, the jury reasonably could have awarded a significant amount of damages for pain and suffering. See Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir.1985) ("amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it"); Hitchcock v. Weddle, 304 F.2d 735, 737 (10th Cir.1962) (jury verdict not excessive if "supported by any evidence reasonably tending to sustain" amount). We hold that the general verdict for $150,000 was therefore not clearly, decidedly, or overwhelmingly against the weight of the evidence.
 
 V
 
 32
 On appeal, USFIC challenges the direct judgment against it for $200,000, which was entered below, due to breach of the cooperation clause in its policy by Bartlett. USFIC argues that the trial judge erred by denying USFIC the right to interpose a defense based on lack of cooperation by Bartlett. USFIC says that this appellate court now would be in the best position to rule on the defense of lack of cooperation. Appellants' Br. at 33-34, 38-39.
 
 
 33
 The district judge entered judgment for Campbell and directly against USFIC for the total amount of damages awarded against Bartlett of $200,000, which included the $150,000 compensatory award and the $50,000 punitive award. In a Rule 60(b) motion filed by USFIC below, the insurer moved the court to "vacate and set aside the Judgment entered against this Defendant [USFIC] on August 5, 1988," asking for an opportunity to present evidence below as to lack of cooperation by Bartlett. The motion later said USFIC "should not be obligated to pay punitive damages awarded against William L. Bartlett." I R.Doc. 117. Thus, it is not entirely clear whether both the compensatory and punitive portions of the judgment against USFIC based on the joint and several awards against Bartlett were assailed below and can be attacked on appeal. However, in view of our conclusion that the lack of cooperation defense has no merit under the insurance policy and the motor carrier endorsement attached to it, we need not separately analyze the compensatory and punitive awards or separately evaluate the validity of them as to USFIC.[15]
 
 
 34
 The insurer attempts to avoid liability by relying on the clause in the policy that requires insureds to cooperate with the insurer in an investigation, or defense, of a claim. The relevant part of the cooperation clause provides:
 
 
 35
 A. YOUR DUTIES AFTER ACCIDENT OR LOSS.
 
 
 36
 1. You must promptly notify us or our agent of any accident or loss. You must tell us how, when and where the accident or loss happened. You must assist in obtaining the names and addresses of any injured persons and witnesses.
 
 
 37
 2. Additionally, you and other involved insureds must:
 
 
 38
 a. Cooperate with us in the investigation, settlement or defense of any claim or suit. No insured shall, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense.
 
 
 39
 b. Immediately send us copies of any notices or legal papers received in connection with the accident or loss.
 
 
 40
 Addendum of Exhibits Doc. 13, Pt. VII(A)(1)-(2), at 19. Even though Bartlett disappeared immediately following the accident in October 1986, USFIC proceeded to present a defense for him that included filing a counterclaim. The record shows that in late April 1988, approximately two months before trial, a claims representative attempted to notify Bartlett by letter that USFIC reserved its right to withdraw from his defense because he had failed to cooperate. I R.Doc. 118, Ex. A. At the opening of the trial, USFIC's counsel attempted unsuccessfully to withdraw as Bartlett's attorney. I Supp.R. 4. The defendants insist that "the extent of [Bartlett's] lack of cooperation did not become evident until [he] failed to appear at trial" in July 1988. Appellants' Br. at 38.
 
 
 41
 The policy also contained a provision known as an Interstate Commerce Commission (ICC) endorsement, the operation of which we conclude is dispositive on the lack of cooperation issue USFIC raises. The relevant part of the ICC endorsement provides:
 
 
 42
 In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles ... It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.
 
 
 43
 Addendum of Exhibits Doc. 13, at 23 [hereinafter ICC Endorsement] (emphasis added). We have held that a standard ICC endorsement "negates any inconsistent limiting provisions in the insurance policy to which it is attached, regardless of whether a shipper or a member of the public is involved in the dispute or whether the dispute is among insurance companies." Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co., 868 F.2d 357, 362 (10th Cir.1989) (emphasis added). The holding in Empire Fire & Marine Insurance Co. is applicable in this case in that the endorsement at issue would operate to negate the cooperation clause because it is a provision that obviously could "relieve the [insurance] company from liability or from the payment of any final judgment." ICC Endorsement.
 
 
 44
 The dispositive issue then is whether Bartlett was an insured within the terms of the endorsement. The Empire Fire & Marine Insurance Co. decision does not address that question, but it recognizes that the parties to an insurance contract may allocate the risk among themselves in any way they wish. The endorsement itself does not define the term "insured," but we are satisfied "that is still a matter governed by the express provisions of the body of the contract." National Mut. Ins. Co. v. Liberty Mut. Ins. Co., 196 F.2d 597, 600 (D.C.Cir.), cert. denied, 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638 (1952). This court has examined the omnibus clause of a policy in an insurance controversy involving an ICC endorsement. We did so to determine whether a party was an insured within the meaning of the ICC endorsement requirement of payment of a judgment recovered against the insured appellant. See Carolina Casualty Ins. Co. v. Transport Indem. Co., 488 F.2d 790, 793-94 (10th Cir.1973). This leads us to conclude that here the ICC endorsement applies and prohibits assertion of the "condition, provision, stipulation, or limitation" based on the cooperation clause so as to defeat recovery on the judgment for Campbell "against the insured [Bartlett] for public liability." ICC Endorsement.
 
 The policy here provides in Part I that:
 
 45
 F. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.
 
 
 46
 Addendum of Exhibits Doc. 13, Pt. I(F), at 16. Further, the omnibus clause in Part IV of the policy states, in part:
 
 
 47
 D. WHO IS INSURED.
 
 
 48
 1. You are an insured for any covered auto.
 
 
 49
 2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except....
 
 
 50
 Id. Pt. IV(D), at 17.
 
 
 51
 Reading the policy and the ICC endorsement together, we are convinced that Bartlett was an "insured." Thus, under the ICC endorsement's prohibition against any condition, provision, or stipulation, etc., relieving the insurer from liability for any final judgment "recovered against the insured," the cooperation clause defense is unavailable to USFIC to prevent Campbell's recovery on the direct judgment for $200,000 against USFIC. We thus find no error in the trial judge's ruling denying USFIC's motion for a new trial.[16]VI
 
 
 52
 In his cross-appeal, Campbell contends that the trial judge erred in directing a verdict in favor of Garrison Trucking on the issue of punitive damages. Campbell has argued that the directed verdict was not appropriate because he had presented evidence that placed at issue the elements of punitive damages under the New Mexico decisional law. The defendants have argued in reply that the evidence did not create factual issues sufficient for submission to the jury.
 
 
 53
 The plaintiff's case supporting punitive damages against Garrison Trucking was comprised solely of documentary evidence. The parties have agreed that the evidence in the record included: (1) the Garrison Trucking personnel file on Bartlett, Addendum of Exhibits Doc. 10; (2) Bartlett's driving record in the State of Alabama, id. Doc. 18; and (3) an affidavit provided by the president of Garrison Trucking, id. Doc. 32, at 2. Campbell has argued that the records show that prior to the accident the management at Garrison Trucking knew that Bartlett "had a tendency to drink while driving, but nonetheless authorized him to drive their motor carriers upon the public highways." Reply Br. on Cross-Appeal at 1. The defendants contend that the documents do not constitute proof of employer authorization, participation, or ratification of the wrongful conduct, a requirement in New Mexico for the imposition of punitive damages on an employer under a theory of vicarious liability.
 
 
 54
 A grant of a directed verdict in a diversity action is subject to a review de novo on appeal under the same federal-law standard that the trial court applied. Under that standard, a court determines "whether, viewing the evidence in the light most favorable to the nonmoving party, the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion." Guilfoyle ex rel. Wild v. Missouri, Kan. & Tex. R.R., 812 F.2d 1290, 1292 (10th Cir.1987). A directed verdict is proper "only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the party opposing the motion would be improper." Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1380 (10th Cir.1989).
 
 
 55
 New Mexico has adopted the rule that punitive damages may not be imposed on an employer for the misconduct of an employee absent some evidence that the employer in some way contributed to, or participated in, the employee's misconduct. The New Mexico Supreme Court has explained that an employer-principal "is liable for punitive or exemplary damages only in cases where the principal or master has in some way authorized, participated in or ratified the acts of the agent or servant, which acts were wanton, oppressive, malicious, fraudulent or criminal in nature." Samedan Oil Corp. v. Neeld, 91 N.M. 599, 577 P.2d 1245, 1247 (1978) (emphasis in original) (quoting Couillard v. Bank of N.M., 89 N.M. 179, 548 P.2d 459, 461 (Ct.App.1976)). In summary, a plaintiff must prove (1) employer authorization, participation, or ratification[17] and (2) that the employee's conduct satisfied the general requirements for the imposition of punitive damages.[18]
 
 
 56
 The trial court appears to have granted the motion for a directed verdict for Garrison Trucking on the ground that the evidence was insufficient to support a finding of employer authorization, participation, or ratification. The judge indicated agreement with the defendants' argument that the evidence showed, at most, employer negligence. II Supp.R. 344.[19]
 
 
 57
 Viewed in the light most favorable to Campbell, the evidence supports an inference that at the time of the accident, Garrison Trucking officials were aware of Bartlett's alcohol-related traffic violations several years back and his refusals to submit to chemical tests. The evidence indicates that when the accident occurred in October 1986, Bartlett's personnel file contained handwritten notations which reflected that he had refused chemical tests in 1974 and 1976 and that he was the subject of a DWI arrest or conviction in 1976. Addendum of Exhibits Doc. 10, at 15. The company official who submitted an affidavit did not directly deny that he was aware of Bartlett's record on these matters. Instead, the official stated that management did not know that Bartlett had "any improper drinking habits."[20]
 
 
 58
 We are convinced that the trial judge did not err in directing a verdict for Garrison Trucking on the punitive damages issue. The evidence was too remote and unconnected with the grossly negligent conduct of Bartlett in the October 1986 accident to meet the standard under New Mexico law. It could not reasonably be found on the evidence, considered in the light most favorable to Campbell, that the trucking company authorized, participated in, or ratified Bartlett's acts so as to subject it to liability for punitive damages, although as his employer it was liable for compensatory damages for his wrongful conduct under respondeat superior principles.
 
 VII
 
 59
 Accordingly, we find no error in the trial judge's rulings. With respect to both defendants' appeal and Campbell's cross-appeal, the judgment and orders are
 
 
 60
 AFFIRMED.
 
 
 
 [1]
 Two of the defendants listed in the caption, Roy Garrison and Harold Chandler, were dropped from the lawsuit prior to trial. The two were dropped because the remaining defendants "agreed that the party vicariously responsible was R.E. Garrison Trucking, Inc." Answer Brief and Brief-in-Chief on Cross-Appeal at 42 [hereinafter Appellee's Br.]
 
 
 [2]
 In an amended complaint, Campbell added USFIC as a defendant. I R.Doc. 29. Campbell added USFIC as a party on the basis of a statutory requirement that motor carriers obtain liability insurance. See Brief-in-Chief of Defendants-Appellants at 34 [hereinafter Appellants' Br.]; see also N.M.Stat.Ann. § 65-2-110(C) (Michie 1981) (motor carrier insurance requirement); see also, e.g., Anchor Equities, Ltd. v. Pacific Coast Am., 737 P.2d 532, 533-34 (N.M.1987) (insurer may be joined as defendant if insurance is required by statute and benefits public and if statute does not preclude joinder)
 The trial judge did not inform the jury that the insurer was a party. I R.Doc. 97, at 6-7. The judge decided that the possibility of prejudice that would result from disclosing the presence of the insurer as a party outweighed the probative value. Id. at 7.
 
 
 [3]
 This determination of punitive damages against only Bartlett was in accord with the court's directed verdict in favor of Garrison Trucking on that issue
 
 
 [4]
 The relevant part of the New Mexico rule provides that if a defendant is
 absent, service may be made by delivering a copy of the process or other papers to be served to some person residing at the usual place of abode of the defendant who is over the age of fifteen (15) years; and if there be no such person available or willing to accept delivery, then service may be made by posting such copies in the most public part of the defendant's premises, and by mailing to the defendant at his last known mailing address copies of the process[.]
 N.M.S.Ct.R.Ann. 1-004(F)(1) (Michie 1992) (emphasis added).
 Under New Mexico law, out-of-state defendants such as Bartlett may be served through a posting. Vann Tool Co. v. Grace, 566 P.2d 93, 94 (N.M.1977); see also N.M.Stat.Ann. § 38-1-16 (Michie 1987 & Supp.1992) (New Mexico long-arm statute).
 
 
 [5]
 The record indicates that Bartlett gave two addresses. The address at Box 364 was listed in Bartlett's personnel file at Garrison Trucking as that of his residence. Addendum of Exhibits Doc. 10, at 5. At the hospital following the accident, Bartlett gave a New Mexico State Police officer the addresses of both the residence at Box 364 in Addison and a Lordsburg, New Mexico, truck stop. I R.Doc. 93, Ex. D. Bartlett's New Mexico driver's license bore the address of the Lordsburg truck stop. Id. Doc. 93, Ex. D; id. Doc. 94 (affidavit of Chavez)
 
 
 [6]
 We note that the defendants had previously challenged the attempted service in a Rule 12(b)(4) motion to quash service or to dismiss that was filed in September 1987, shortly after the attempted service. I R.Docs. 13, 14; see also Fed.R.Civ.P. 12(b)(4) (motion alleging insufficiency of process). In a ruling that is not at issue on appeal, the district judge denied the initial motion
 
 
 [7]
 The validity of the attempted service on Bartlett depends in large part upon a passage in the affidavit of Don Wright, chief deputy sheriff of Winston County, Alabama:
 I have personal knowledge that William L. Bartlett sometimes lived, while not on the road truck driving, at the residence of his sister, whose name is Linda Hayes and who lives at Rt. 1, Box 37C, Addison, Alabama, at the time that this case was served on August 21, 1987.
 I R.Doc. 93, Ex. B.
 An affidavit of Deputy Sheriff Ergle of Winston County also stated in part that he was informed by chief deputy Wright that "Bartlett's sister is Linda Hayes and lives at the residence located at Rt. 1, Box 37C, Addison, Alabama," and that he posted the summons and complaint on the door of the residence at that address on August 21, 1987. Id. Doc. 93, Ex. A.
 
 
 [8]
 Campbell contends that Bartlett "waived his right to object to jurisdiction" by filing a counterclaim that sought affirmative relief. Appellees' Br. at 26-27. We disagree
 Bartlett's attorneys filed on his behalf an answer and a counterclaim alleging that Campbell was negligent. I R.Doc. 40. We view Bartlett's counterclaim as a compulsory counterclaim because it arose "out of the transaction or occurrence that is the subject matter" of the action, the collision. Fed.R.Civ.P. 13(a). We follow the rule that by filing a compulsory counterclaim a party does not waive Rule 12(b) objections. See Hasse v. American Photograph Corp., 299 F.2d 666, 668-69 (10th Cir.1962). See generally 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1397 (1990) (stating view that "trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory").
 
 
 [9]
 We have explained that a "mixed question is present when the facts are admitted or established and the law is undisputed; the sole issue is whether the law applied to the facts satisfies the statutory standard." Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986) (emphasis added)
 
 
 [10]
 A review de novo of a mixed question is appropriate if it involves primarily legal issues. Love Box Co. v. Commissioner of Internal Revenue, 842 F.2d 1213, 1215 (10th Cir.) (quoting Supre, 792 F.2d at 961), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). Even though applying the term "usual place of abode" normally involves a fact-intensive determination, the issue in this case primarily is legal because it involves the application of undisputed facts concerning Bartlett's place of residence to legal rules that define "usual place of abode." But see First Nat'l Bank & Trust Co. v. Ingerton, 207 F.2d 793, 795 (10th Cir.1953) ("[w]here appellee had her usual place of abode was a question of fact")
 Prior to the trial judge's ruling on the motion to quash service, the defendants did not challenge with conflicting evidence the chief deputy sheriff's assertion that Bartlett "sometimes lived" with his sister. In urging the court following trial to reconsider its initial ruling on the validity of service, the defendants filed an affidavit in which the sister asserted that Bartlett "does not now nor has he ever lived with me at [Box 37C]." I R.Doc. 107 (affidavit of Hayes). The trial judge denied as untimely the post-trial motion to reconsider the motion to quash. Id. Doc. 112. We agree with the judge's ruling that the post-trial affidavit was untimely.
 
 
 [11]
 The defendants implicitly concede they first raised the constitutional issues concerning punitive damages in a brief supporting the post-trial motion for judgment n.o.v. See I R.Doc. 115, at 2-3. We further observe that the generalized discussion in the appellants' post-trial brief made it far from clear that they intended to challenge the constitutionality of the burden of proof. We have noted that our " 'policy of declining to consider an argument not raised below is strongest where the district judge was not aware of the argument.' " Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991) (quoting Richerson v. Jones, 572 F.2d 89, 97 (3d Cir.1978))
 As the issue is not novel, it could have been raised as a challenge to the instructions in conformity with Rule 51. See, e.g., Jessen v. National Excess Ins. Co., 108 N.M. 625, 776 P.2d 1244, 1251 (1989) (Scarborough, J., dissenting) (advocating requirement of proving punitive damages by clear and convincing evidence because punitive damages are "quasi-criminal"). See generally, e.g., 1 Linda L. Schlueter & Kenneth R. Redden, Punitive Damages § 3.11(B), at 60-61 (2d ed. 1989) (summarizing constitutional issues concerning burden of proof).
 In sum, we find no reason in this case to address the issue concerning burden of proof that the appellants raise for the first time on appeal. See Hicks, 928 F.2d at 970.
 
 
 [12]
 The defendants have not challenged as excessive the $50,000 awarded to Campbell in punitive damages against Bartlett
 
 
 [13]
 The district judge instructed the jury that it could consider the following elements in determining damages: (1) the value of lost earnings and "earning capacity reasonably certain to be lost in the future"; (2) expenses for necessary medical care received and "reasonably certain to be received in the future"; (3) the "nature, extent and duration of the injury"; (4) the "pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury"; (5) the expenses Campbell incurred in disposing of his trailer after the accident; (6) the loss of Campbell's equity in the trailer; (7) Campbell's loss of profits resulting from the loss of his trailer from the date of the accident to the date of trial; (8) the amount of the deductible on Campbell's insurance on his tractor-trailer rig; (9) the necessary expenses Campbell incurred as a result of the accident; and (10) the aggravation of any preexisting ailment or condition. II Supp.R. 419-21
 
 
 [14]
 The defendants did not challenge Campbell's claim for approximately $7,400 for actual medical bills and miscellaneous expenses
 
 
 [15]
 USFIC asserted the cooperation clause issue in a post-trial motion seeking relief from the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. I R.Doc. 117. Our treatment of such a motion is important because it implicates the applicable standard of review. A party's appeal from the denial of a Rule 60(b) motion "raises for review only the district court's order of denial and not the underlying judgment itself." Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir.1991). We generally review a ruling on a Rule 60(b) motion for abuse of discretion. See id. Motions seeking reconsideration of a judgment also may be filed pursuant to Rule 59(e), the provision for a motion to alter or amend the judgment. As we have explained, although the two rules are distinct, "[w]hich rule applies to a motion depends essentially on the time a motion is served." Id. at 1243. Motions served within 10 days of judgment "ordinarily will fall under Rule 59(e)," while motions served later fall under Rule 60(b). Id
 The argument to the district judge in the brief below supporting the motion makes it evident that the insurer deliberately chose to rely upon Rule 60(b)(6). Rule 60(b)(6), which is the ground for relief for "any other reason justifying relief from the operation of the judgment," is the catchall category for requests for relief from a judgment. Even so, our circuit has "consistently held that regardless of how styled, a motion questioning the correctness of a judgment and timely made within ten days thereof will be treated under Rule 59(e)." Dalton v. First Interstate Bank, 863 F.2d 702, 703 (10th Cir.1988). In this case, the motion showed that it was served by mailing it to opposing counsel on August 17, within 10 days of the rendition of judgment. I R.Doc. 117; Fed.R.Civ.P. 5(b) ("Service by mail is complete upon mailing"); 6(a) (computation of time prescribed by rules). Accordingly, we treat this motion as one filed under 59(e) because it was served within 10 days of the entry of the judgment, and we review the merits.
 
 
 [16]
 In connection with the cooperation clause argument, USFIC makes the general argument that punitive damages should not be awarded against an insurer because such award would defeat the public policy purposes of punitive damages. The New Mexico Supreme Court has previously addressed and rejected the same argument. Baker v. Armstrong, 106 N.M. 395, 744 P.2d 170, 173-74 (1987)
 
 
 [17]
 The relevant New Mexico uniform jury instruction states: "The principal [employer] is liable for punitive or exemplary damages only when the principal [employer] has in some way authorized, participated in or ratified the acts of the agent [employee]." N.M.S.Ct.R.Ann. 13-1826 (Michie 1991)
 
 
 [18]
 The New Mexico uniform jury instruction that addresses the general requirements for imposing punitive damages provides:
 13-1827. Punitive damages.
 If you find that .................... should recover compensation for damages, and if you further find that the conduct of .................... was [malicious], [willful], [reckless], [wanton], [grossly negligent], [fraudulent] [or] [in bad faith], then you may award punitive damages.
 Such additional damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses.
 The amount of punitive damages must be based on reason and justice taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the injury and to the damages given as compensation and not disproportionate to the circumstances.
 [Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.]
 [Willful conduct is the intentional doing of an act with knowledge that harm may result.]
 [Reckless conduct is the intentional doing of an act with utter indifference to the consequences.]
 [Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's (rights) (safety).]
 [Grossly negligent conduct is an act or omission done without the exercise of even slight care under the circumstances.]
 N.M.S.Ct.R.Ann. 13-1827 (Michie 1991) (interlineation omitted).
 
 
 [19]
 In making the ruling, the trial court agreed with a defense attorney's statement that "taking their position to the furthest would be that [Garrison Trucking was] negligent. However, negligence is not the standard for ratification, authorization, or participation." Id. The trial judge explained: "Well, I am inclined to agree. I don't think you can get at the employer on the punitive damages if they're assessible [sic] against the driver." Id
 
 
 [20]
 Addendum of Exhibits Doc. 32, para. 6, at 2. In the affidavit, Knight stated: "Prior to the accident at issue in this litigation, neither I nor anyone else affiliated with R.E. Garrison Trucking, Inc., had any knowledge of any improper drinking habits on the part of William L. Bartlett." Id