The Honorable Mary Anne Salmon State Representative 29 Heritage Park Circle North Little Rock, Arkansas 72116-8528
Dear Representative Salmon:
This is in response to your request, on behalf of a constituent, for an opinion on two questions regarding the accessibility of motor vehicle driving records. Specifically, your two questions are as follows:
 1. Must an insurer provider have signed permission from the driver to secure an MVR or will the mere fact that the insured has presented it to the insurance company release them from any liability?
 2. If an insurer is placing $1 million liability coverage on trucks running up and down the highway, do they not have a right to know the driving history of each person who has access to these trucks?
RESPONSE
It is my opinion that, beginning July 30, 1999, Arkansas law will authorize an insurer to obtain a traffic violation report without permission from the driver if the driver is the "insured" or "applicant." It is unclear whether this language includes a person, as your question suggests, who is authorized to drive the insured vehicle, but who is not technically the "applicant" or the named "insured." A review of the new act and related statutes appear to support a liberal construction of the word "insured" in this regard. The Office of Driver Services has the authority to implement this legislation, however, under rules and regulations promulgated by the Department of Finance and Administration. In my opinion the subject matter of your second question is one of public policy for the legislature. Your second question does not present a question of law that can be addressed in an Attorney General's opinion.
Question 1 — Must an insurer provider have signed permission from thedriver to secure an MVR or will the mere fact that the insured haspresented it to the insurance company release them from any liability?
In my opinion this question was addressed, prior to July 30, 1999 in A.C.A. § 27-50-908 (Supp. 1997), which provided in pertinent part as follows:
 (a)(1) The authorization to obtain a driver record by anyone other than the driver, as provided in this subchapter, may be in the form of a signed release by the driver, power of attorney, and in the case of a minor, the parent or guardian or a legally appointed representative of the driver.
 (2)(A) When motor vehicle insurance is applied for by a person or on his behalf and the application contains a statement that a traffic violation report may be obtained by the insurer, then the person shall be deemed to have given his consent for the insurer to obtain a traffic violation report on the applicant or any person named in the application as a driver of the insured motor vehicle.
 (B) The Office of Driver Services shall provide a method to determine that all licensees have given their consent for traffic violation reports to be obtained by insurers as provided. [Emphasis added.]
In response to your first question, therefore, under the law in existence prior to July 30, 1999, no permission was necessary from a particular driver if the insurance application contained a statement that a traffic report might be obtained, and if the driver was listed in the application as a driver of the insured vehicle.
Act 1359 of 1999, however, effective July 30, 1999, repeals the language of (a)(2)(A) and (B) above, and adds a provision to a separate statute, A.C.A. § 27-50-906, as follows:
 The Office of Driver Services may furnish an abstract of any driver's record to:
* * *
 (6) Any insurer licensed to do business in Arkansas, or its agents, employees, or contractors, in connection with the driving record of an insured or applicant.
This provision authorizes the Officer of Driver Services to release an abstract of a particular driver to an insurance company, and does not require the driver's permission, but the statute only applies to the driving records of "insureds" or "applicants." A question may arise as to whether this provision grants an insurance company the right to obtain violation reports on persons who drive the vehicle in question, but who are not necessarily the "applicant" or the named "insured."
The term "insured" is generally defined as "[t]he person who obtains or is otherwise covered by insurance on his health, life, or property. The `insured' in a policy is not limited to the insured named in the policy, but applies to anyone who is insured under the policy." Black's Law Dictionary, (5th Ed. 1979). Judicial decisions interpreting the term, in some contexts, however, indicate that the language of a particular insurance contract is controlling on the interpretation of the word.See, e.g., Campbell v. Bartlett, 975 F.2d 1569, 1581 (10th Cir. 1992) (truck driver was "insured" with meaning of Interstate Commerce Commission endorsement to motor carrier policy, and the question is "governed by the express provisions of the body of the contract") andMalisfski et al. V. Indemnity Insurance Company of North America,135 F.2d 910 (4th Cir. 1943) (stating, in that case, that the truck driver was "not an insured unless the omnibus coverage clause makes him such").
There is some question, therefore, as to the meaning of the term "insured" in the language of Act 1359. It may be that access by insurance companies to records of named insureds and all persons covered under an insurance policy was the intention of Act 1359. That act substitutes what appears to be a broader provision in A.C.A. § 27-50-906 regarding insurance companies, for the pre-existing provision in A.C.A. § 27-50-908
dealing with such companies. The former provision, which deals with the forms of authorization required to obtain a driver's report, authorized the procurement of driver reports on drivers named in the insurance application, although they were not necessarily the "insured." Such persons were "deemed" to have given their consent to release of the records. The former provision also included a requirement that the Office of Driver Services provide a method for determining that all licensees had given their consent to reports provided to insurers. This provision was repealed by Act 1359.
The new provision is placed under a different statute (A.C.A. §27-50-906), which provides that the Office of Driver Services may furnish an abstract of any driver's record to "any insurer . . . in connection with the driving record of an insured or applicant." Nothing is mentioned in this statute about releases or forms of authorization. The legislative intent of the statute, in my opinion, might best be given effect under a broad interpretation of the word "insured." Such interpretation would include anyone who is insured or "covered" under the policy. Black'ssupra. This would appear consistent with the reason for granting access in the first place, which is presumably to aid the insurance company in gauging its risk under the policy of insurance.
The Office of Driver Services of the Department of Finance and Administration is charged with the administration of these statutes. Rules and Regulations may be promulgated by the Department to carryout these provisions.
One final point must be noted with regard to your first question. The correspondence enclosed with your request indicates that your constituent's question arises in the context of a commercial trucking insurer, who has an interest in obtaining reports on commercial truck drivers. The drivers themselves are not "applicants" for insurance as referred to in the statute. Again, a question arises as to whether such drivers be characterized as "insureds" for purposes of the statute above. In the context of commercial drivers, however, a separate statute is also relevant. Section 27-23-117 of the Arkansas Code is a part of the "Arkansas Uniform Commercial Driver License Act." It applies to commercial drivers, and requires the Office of Driver Services to provide full information regarding the driving record of any person holding a commercial drivers license to certain government officials, employers, and to "others, authorized to receive such information pursuant to A.C.A. § 27-50-906." Insurers are now "others" authorized to receive information pursuant to A.C.A. § 27-50-906. The question presented involves the extent of the information afforded them under A.C.A. §27-50-906. Who is included in the term "insured" for purposes of an insurance company's access to driver records? It can reasonably be argued, in this regard, that A.C.A. § 27-23-117, regarding the release of driving records of persons holding commercial driving licenses, now authorizes insurance companies to obtain records of such persons without their permission as long as the truck driver can be classified as an "insured" of the insurance company. If Act 1359 were interpreted as authorizing insurance companies to obtain driving record information only on the applicant or named "insured" (the trucking company), in many cases A.C.A. § 27-23-117 could not be given effect. The trucking company is not the entity holding a commercial driver's license that must be provided under A.C.A. § 27-23-117. The individual truck driver is. The legislature is presumed to have known of the existence of this commercial driver license provision when it amended A.C.A. 27-50-906. See e.g., Robert D.Holloway, Inc., v. Pine Ridge Addition Residential Property Owners,332 Ark. 450, 966 S.W.2d 241 (1998); and Alltell Mobile Communications,Inc., v. Arkansas Public Service Commission, 63 Ark. App. 197,975 S.W.2d 884 (1998).
Generalized definitions of the term "insured" appear to support this interpretation of the statute. See Black's supra. In my opinion, however, a question may remain concerning the interpretation of the word "insured."
Again, however, the Department of Finance and Administration has the authority to promulgate administrative regulations to implement these provisions. Their regulations and interpretation of the statutes will be upheld unless clearly wrong. See, e.g., ACW Inc. v. Weiss, 329 Ark. 302,947 S.W.2d 770 (1997).
Question 2 — If an insurer is placing $1 million liability coverage ontrucks running up and down the highway, do they not have a right to knowthe driving history of each person who has access to these trucks?
As to the rights of an insurer to obtain driver records without signed permission, please refer to the answer to your first question above. I must note, however, that your second question does not appear to present a legal question that can be addressed in an Attorney General's opinion. The question posed, rather, is one of public policy for the legislative branch. I must therefore decline to address this question in this opinion.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh